## Case No. 555.

### ARNOLD v. CLIFFORD.

[2 Sumn. 238.][1]

Circuit Court, D. Rhode Island. June Term, 1835.

CONTRACTS TO INDEMNIFY FOR PUBLICATION OF LIBEL—VALIDITY—PUBLIC POLICY.

1. A promise to indemnify another for doing a private wrong, or committing a public crime, is against public policy, and is void in law. Therefore, a promise to indemnify the publisher of a libel is void.

2. The liberty of the press does not sanction the publication of libels.

[Cited in The Hudson, 15 Fed. 167.]

At law. This was an action on the case [by Isaac Arnold against Benjamin Clifford] for a libel, by publishing, in April, 1835, in the Providence Republican Herald, a false and injurious account of the trial of a cause, in which the plaintiff was a party. There was a special plea in justification, and issue thereon.

At the trial, the principal question was, whether the publication contained a true, fair, and accurate account of the trial of the former cause; and it was argued by Tillinghast and Webster for the plaintiff, and by Richard W. Greene and Whipple, for the defendant. In the course of the trial, the question arose, whether, supposing the publication to be a libel, a promise, by the defendant, to indemnify the publisher, was valid in point of law.

[1] [Reported by Hon. Charles Sumner.]

STORY, Circuit Justice. I have not the least doubt upon this point. A promise to indemnify another for doing a private wrong, or for committing a public crime, is against public policy, and is void in law. It is common learning, that among tort-feasors, who are knowingly such, there can be no contribution for damages recovered against any one of them, even although there be a promise of indemnity or contribution. A fortiori, the same doctrine applies to cases of indemnity for the commission of a public crime. No one ever imagined, that a promise to pay for the poisoning of another, was capable of being enforced in a court of justice. It is universally treated as illegal, it being against the first principles of justice, and morals, and religion. The man, who is hired to publish a libel against another, is guilty of an offence equally reprehensible in morals, though not so aggravated in its character; for the publication may not only be ruinous to the reputation of the individual aspersed; but may involve an innocent family in agonizing distress, and, perhaps, destroy its peace forever. There is no such right recognized in civil society, or at least in our forms of government, as the right of slandering or calumniating another. The liberty of the press does not include the right to publish libels. Much less does it include the right to be indemnified against the just legal consequences of such publications. See the case of Colburn v. Patmore, 1 Cromp. M. & R. 73, 4 Tyrw. 677; Pearson v. Skelton, 1 Mees. & W. 504.

Verdict for the plaintiff.