[See Case No. 12,219.]

## Case No. 12,219.

## The SAILOR PRINCE.

### [1 Ben. 461.] [1]

District Court, S. D. New York. Oct., 1867.

MARSHALLING OF ASSETS — SEAMEN'S WAGES — MORTGAGEE—JURISDICTION—VESSEL AND FREIGHT.

1. Seamen filed a libel for wages against a ship and her freight, and had a decree against them. The vessel was sold and her proceeds brought into the registry. The freight money was also attached, but was not brought into the registry, and the libellants applied to have their decree paid out of the proceeds of the ship. Their application was contested by one Patrick, who had filed a libel against the proceeds of the vessel, to which he claimed to be entitled, because he had purchased at sheriff's sale the interest of a foreign corporation which had held mortgages on the vessel which, as Patrick claimed, had become forfeited (thus making the corporation's title to the vessel absolute) at the time of the commencement of the suit, and the issuing of the attachment in pursuance of which the sheriff's sale of the vessel had taken place. Patrick claimed that the decree for seamen's wages should be satisfied out of the freight instead of out of the proceeds of the vessel. An answer to Patrick's libel had been interposed by other claimants, who alleged that all the interest of the foreign corporation in the mortgages on the vessel had passed to them, before the commencement of the suit in which the attachment was issued. *Held*, that the principle, that, where one creditor has two funds to resort to, while another creditor has a security on only one of such funds, the court will compel the former to resort to the other fund, if that is necessary for the satisfaction of both claims, is sometimes applied in the admiralty, but that it was not applicable to this case.

[Cited in The Edith, Case No. 4,282; The Orient, Id. 10,569; The Olivia A. Carrigan, 7 Fed. 511; The Hudson, 15 Fed. 170.]

2. The admiralty has no jurisdiction to enforce the claim of a mortgagee of a vessel.

[Cited in Rodd v. Heartt, 21 Wall. (88 U. S.) 608; The Grand Republic, 10 Fed. 399.]

3. Patrick stood before the court only as having the rights of mortgagee, and his libel, being a libel by a mortgagee against the proceeds of the vessel, could not be maintained.

4. That libel might, however, be treated as a petition.

5. The court had no authority to adjudicate upon Patrick's title to the mortgages, which was contested by the other claimants.

6. Even in disposing of claims against proceeds in the registry, this court refuses to consider a claim that is contested.

7. Patrick's claim could not be set up to defeat or delay the claim of the seamen, and of the master and other persons interested, to be paid out of the proceeds.

8. The allegation, that, prior to the attachment of the vessel, the mortgagee had taken possession of her, could not affect the question, because such taking possession was for the benefit of the real owner of the mortgages, and the question who was such real owner was the question in dispute between Patrick and the other claimants.

9. The decree in favor of the seamen and the master must be satisfied out of the general fund in court, leaving the question whether that payment should be charged against the proceeds of

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

the vessel or the freight, to be determined on the final hearing on Patrick's libel.

[Cited in The Amos D. Carver, 35 Fed. 669.]

This was a contest between different parties having claims upon a fund in court. The amount in the registry of the court arising from a sale of the vessel was $8,869.58. The libellants had a decree for seamen's wages amounting to $4,978.70, which was against the vessel and her freight. Other parties had claims against the vessel for wharfage, ballast, master's wages, consignees' disbursements, &c., &c., amounting in all to $5,287. The libellants, Murray and others, now applied to the court for an order that the decree in their favor be paid out of the proceeds of the ship. When the libel was filed, process was issued against the vessel and her freight. The process was not then executed on the vessel, because she was in the actual custody of the sheriff of the city and county of New York, under process issued to him from a state court of the state of New York. But the marshal returned that he had attached $7,100 in gold, being freight money in the hands of Kirkland and Von Sachs. After the attachment of the freight by the marshal, the gold attached was, by arrangement, placed in the hands of Messrs. Evarts, Southmayd & Choate, and sold and invested in government securities. The marshal did not take possession of the freight money. Prior to the attachment of it by the marshal, it had been attached by the sheriff under the process so issued to him, and it was claimed to be held under such process of the sheriff at the time the marshal attached it. [Case No. 12,218.] On these facts this court held that there had been a valid attachment of the freight money in this suit, and that this court, therefore, had jurisdiction of this action. This decision was made on the 13th of June, 1867. On the 19th of July the vessel herself, she having been released from custody by the sheriff, was attached by the marshal on further process issued in this suit. The decree in favor of the libellants, Murray and others, was made on the 12th of September. The freight money was not in the registry of the court, but was still in the hands of Messrs. Evarts, Southmayd & Choate.

The application of Murray and others was opposed by William Patrick, who filed a libel in this court on the 11th of September, praying process against the proceeds of the vessel in the registry. The claim set up by Patrick was stated thus in his libel. Charles Lanier, on the 26th of September, 1866, brought a suit in the supreme court of New York against the Barned's Banking Company, an English corporation, and obtained an attachment against it for $50,000, to the sheriff of the city and county of New York. The sheriff on the same day attached the Sailor Prince under the attachment. On the 10th of July, 1867, Lanier obtained a judgment in his suit, and took out an execution, on which the sheriff, on the 18th of July, sold the vessel to

Patrick for $100, which Patrick paid, receiving from the sheriff a bill of sale of the vessel. Patrick's libel averred that the Barned's Banking Company were, on the 26th of November, 1866, the legal owners of the vessel, by virtue of two mortgages made by Dixon and Wynne, her owners, one in February, 1865, and one in September, 1865, and both owned by the company; that both of the mortgages had become forfeited, and the title of the company to the vessel had become absolute, before the 26th of November, 1866, by the failure of Dixon and Wynne to pay the mortgages; that Patrick, by becoming such purchaser, was the owner of the vessel, and was entitled to all the proceeds of the vessel, after the payment of all just claims against her which were prior liens to his; that, under the libels of Murray and others, process had been levied on both vessel and freight; that all of the wages and disbursements claimed by Murray and others and by Sadler, the master, were earned during the voyage of the vessel from Manilla to New York, next previous to her being seized by the sheriff; that the freight for her cargo from Manilla to New York was $16,738.32; that the sheriff levied on the freight money under the Lanier attachment, and afterward the marshal levied on it under the process in this suit; that the freight money was afterward, by consent, paid over to Evarts, Southmayd & Choate, who held it subject to all the rights of the sheriff and the marshal, and of all parties interested in it; that this court had held that the attachment of the freight money by the marshal was valid, and that the freight money was under the control and subject to the order and disposition of the court; that the amount of the wages of the seamen and the wages and disbursements of the master were, by law, liens on the freight, as well as on the proceeds of the ship, while Patrick was entitled to only the proceeds of the ship; and that right and justice required that this court should order the amount of the claims of the seamen and master to be paid exclusively out of the freight, without resorting to the proceeds of the ship in court, and that a sufficient amount of the freight should be ordered to be paid into court for that purpose, and that all the proceeds of the vessel in the registry, after deducting such claims as might be prior liens on such proceeds exclusively, should be paid over to Patrick.

The firm of Smith, Simpson & Co., of London, answered the libel of Patrick, and claimed that, by transactions between themselves and the Barned's Banking Company, all the interest of that company in the two mortgages on the vessel passed, prior to November 26th, 1866, to Smith, Simpson & Co.; also, that the rights of Patrick in the vessel and her proceeds were subordinate to those of Smith, Simpson & Co.

W. G. Choate, for Murray and others.

G. DeF. Lord, for Patrick.

C. F. Southmayd, for Smith, Simpson & Co.

BLATCHFORD, District Judge. The principle invoked on the part of Patrick, and under which the court is asked to deny the application of the seamen to be paid out of the proceeds of the vessel, is, that, where one claimant has two funds to resort to, while another creditor has a security on one of such funds only, the court will compel the former to resort to the other fund, if such a step is necessary for the satisfaction of both claims; and that, whenever the election of a party having two funds will disappoint the claimant having the single fund, the court will control that election, and will compel the one to resort to that fund which the other cannot reach, and by these means will protect the claimant on the single fund. Coote, Adm. 122, 123. This principle is a sound one, as a general principle of law, and is applied in courts of admiralty to a certain extent, and in cases to which it is properly applicable. But in none of the cases cited, and relied on, on the part of Patrick, has the principle been applied to a case like the present one. The cases of The Trident, 1 W. Rob. Adm. 29; The La Constancia, 4 Notes of Cas. 285; The Mary Ann, 9 Jur. 95, and The Dowthorpe, 2 Notes of Cas. 264,—were all of them cases in which the question arose in regard to bottomry bonds. In The Trident, the question was between two bottomry bonds; in The La Constancia, between two bottomry bonds and claims for seamen's wages, pilotage, and towage; in The Mary Ann, between a bottomry bond and a claim for seamen's wages; and in The Dowthorpe, between a bottomry bond and claims for pilotage, towage, and seamen's wages. Now, the jurisdiction of the admiralty in cases of bottomry bonds is unquestioned. It arrests the vessel and condemns and sells her at the suit of the holder of the bond. But the admiralty has no such jurisdiction at the suit of the mortgagee of a vessel. It never takes jurisdiction of such a mortgage to enforce its payment, nor will it try, by a possessory action, the title to, or the right of possession of, a vessel under a mortgage. This is the settled doctrine of the courts of the United States. Bogart v. The John Jay, 17 How. [58 U. S.] 399. An enlarged cognizance of mortgages of vessels was given to the admiralty court in England by the statute of 3 & 4 Vict. c. 65, but no similar law has been passed by congress. Patrick does not stand before this court with any higher claim than that of a mortgagee. He claims to represent, and stand in the place of, the Barned's Banking Company, as owners of the mortgages on the vessel, and to have all their rights. As mortgagee, he could not have brought his libel against the vessel. And, although it is true that the admiralty can, where proceeds are rightfully in its custody, entertain supplemental suits by parties in interest, to ascertain to whom the proceeds rightfully belong, and deliver them over to the parties who establish the lawful ownership thereof. (Andrews v. Wall, 3 How. [44 U. S.] 573), yet it was decided by the supreme court, in the case of Schuchardt v. The Angelique, 19 How. [60 U. S.] 239, that, where a mortgage existed upon the moiety of a vessel, which was afterward libelled, condemned and sold by process in admiralty, and the proceeds were brought into the registry of the court, the mortgagee could not file a libel against a moiety of those proceeds. The libel of Patrick is such a libel, and, therefore, cannot be maintained. His claim is before the court only on his libel, and his objection to the application of the seamen is founded solely on his libel. That would, therefore, be a sufficient answer to his objection in the form in which it is now made. But, as was intimated by the supreme court in the case of Schuchardt v. The Angelique [supra], a mortgagee of a vessel can, when its proceeds are brought into the registry, after a sale, apply to the court by petition, claiming an interest in the fund. It is proper, therefore, to consider the claim of Patrick, as mortgagee, to have the seamen thrown upon the freight for their payment, on the assumption that Patrick is before the court in a proper way.

I find no authority for the course of practice urged on the part of Patrick. On the contrary, in the case of The Fortitude, 2 Notes of Cas. 515, Dr. Lushington, the same judge who had previously decided the case of The Dowthorpe, refused, either in the exercise of the ordinary jurisdiction of the court, or in virtue of the enlarged power given to the court by the statute of 3 & 4 Vict. c. 65, to entertain a suit, brought by the mortgagee of a share in a vessel, against the vessel and her freight, the vessel being under arrest for wages, and the aid of the court being asked to arrest the freight. The court placed its want of jurisdiction on the ground that the mortgagee could not have an original action against the freight, and that the court could not adjudicate upon the title to the freight, which was disputed by the owner of the share that was not mortgaged. The court also says (page 523), that, in the case of The Dowthorpe, it was induced to go the full length of the authority it had. Now, in the present case, the court is asked to adjudicate upon the title to these mortgages. They are claimed by Patrick, and also by Smith, Simpson & Co. The suit by Patrick, on the issues raised by the answer of Smith, Simpson & Co., resolves itself into a contest as to the ownership of the mortgages. It is not a question of title to the vessel, for, under the process of the state court, nothing was or could be attached or sold but the right, title and interest of the state court debtor in the vessel. The suit in the state court was not one in rem against the vessel, and, under the sale at which Patrick bought, he could acquire no better title to the vessel than Lanier's debtor possessed, and it was that title, and not the vessel itself, which he bought.

The Moses Taylor, 4 Wall. [71 U. S.] 427. If, therefore, the Barned's Banking Company had no interest in the mortgages, and thus no interest in the vessel, Patrick has no standing in court. That he has, for that reason, no standing in court, is asserted by Smith, Simpson & Co., who claim that they had acquired all the interest of the company in the mortgages. The adjudication of a question of this kind is peculiarly the province of a court of equity, and is not within the usual functions of a court of admiralty. In the case of The Saracen, 6 Moore, P. C. 74, Lord Langdale says: "With respect to the equitable jurisdiction of the court of admiralty, it is true that, in the decision of cases properly within the jurisdiction of the court of admiralty, equitable considerations ought to have their weight, but it does not thence follow that the court of admiralty has jurisdiction to do all that courts of equity may do, in suits instituted by persons suing either for themselves, or on behalf of themselves and others, for the administration of assets, or the distribution of a common fund in which several persons are interested, or upon which they have claims. No instance of the exercise of any such jurisdiction has been cited, and, in the absence of any authority, it does not appear to us that there is any such jurisdiction." And, even under the power of the court to dispose of proceeds in the registry, the court, in its discretion, refuses to consider a claim that is contested. Leland v. The Medora [Case No. 8,237]; The Maitland, 2 Hagg. Adm. 253. The principle on which the court acts in disposing of proceeds in court, is not to assume the jurisdiction of a court of chancery, to compel parties to submit to a marshalling of assets, in the usual acceptation of that authority. The Rodney [Case No. 11,993]. I think, therefore, that I should be departing from the settled course of practice in admiralty, if I should allow the claim set up by Patrick to be interposed to delay or control in any way the payment of the seamen and the master and the other parties interested, out of the proceeds of the vessel in the registry. Seamen are peculiarly wards of the court, and their claims, and the other admiralty claims against the vessel or her freight, ought to be adjusted and paid without reference to the contest between these rival claimants to the mortgages on the vessel. They will be so adjusted on a hearing of all parties concerned, other than Patrick, and Smith, Simpson & Co.

After the above decision was rendered, an application was made on behalf of Patrick for leave to amend his libel, which was granted to him, and on this amended libel he renewed his application.

BLATCHFORD, District Judge. The only averment contained in the amendment is, that the mortgagee, whose interest Patrick claims to have acquired and to represent, through a sale of it by the sheriff in the state court, on an attachment issued against such mortgagee, had, prior to the issuing of the attachment, assumed the possession, management, and control of the vessel, and had paid the wages of the seamen employed in her, and that, by reason of those facts, and the other facts stated in the libel, Patrick became, and, at the time of such libel, was, the legal owner of the vessel, and was entitled to her possession, and was lawfully in possession of her, and is entitled to all her proceeds. The only new fact averred, that was not in the libel when the case was before the court on the former occasion, is, that the mortgagee was a mortgagee in possession, exercising acts of control and ownership over the vessel. The original libel averred that the mortgages had become forfeited, and the title of the mortgagee to the vessel had become absolute, before the issuing of the attachment by the state court, and that thereby the mortgagee became the legal owner of the vessel, and that Patrick represented the title of the mortgagee.

The difficulty in the case on the part of Patrick is, that the taking possession of the vessel by the mortgagee does not vary the question, so far as the controversy is concerned of which this court is asked to take cognizance. Although the mortgagee did take possession, and although, as between him and the mortgagor, that act may, in connection with the non-payment of the mortgages when due, and their consequent forfeiture, have been sufficient to divest the mortgagor of what title he had, and vest it in the mortgagee, yet, if, at the time of so taking possession, the mortgagee did not own the mortgages, but had previously passed away all interest in them to Smith, Simpson & Co., such taking possession either amounted to nothing so far as the mortgagee was concerned, or else it inured to the benefit of the real owner of the mortgages. The right of the mortgagee to take possession in his own right, or except as representing the real owner of the mortgages, being contested here by Smith, Simpson & Co., the contest here is still one between Patrick, claiming that the interest in the mortgages remained in the mortgagee, who then took possession, and is now represented by Patrick, and Smith, Simpson & Co., who claim that the interest in the mortgages did not remain in the mortgagee, but had been transferred to them. The contest here, therefore, remains what it was before the libel was amended—merely a contest as to the ownership of the mortgages. The court cannot reach any decision on the libel without adjudicating as to the title to the mortgages. The mere act of taking possession by the mortgagee could not destroy the claim of Smith, Simpson & Co. to the mortgages, if they had previously acquired the interest of the mortgagee in the mortgages, as is

claimed by them in their answer to Patrick's libel.

I am, therefore, of opinion that the libel of Patrick, even as amended, cannot be allowed to be interposed to control the payment of the seamen, for the reasons set forth in my former opinion.

So far as the seamen, wards of the court, and the master, whose claims are peculiarly admiralty claims, and are claims against both ship and freight, are concerned, Patrick is not entitled to compel them to become parties to a marshalling of assets, and to wait for the payment of the amounts decreed to them, until it can be determined whether as against Patrick they ought not to be paid exclusively out of the freight. They must be paid, and paid at once, out of any funds of which the court has control, on which they have a lien, without regard to Patrick's claim. But this can be done without doing injustice to Patrick. The decision of the court on the questions raised by the libel of Patrick has been made on motion, and not on the formal decision of the suit brought by him, on a final or plenary hearing. If this court is wrong in its views, and disposes finally now, on motion, of the fund in which Patrick claims an interest, he will perhaps be cut off from the opportunity of correcting by appeal any error that may have been committed by this court. But if, while the seamen and master are paid, and paid promptly out of the money which the court has at its disposal to pay them, that is, out of the proceeds of the vessel and the freight indiscriminately, on both of which their claims are liens, and against both of which they have decrees, the question as to whether, as regards Patrick and his claim, the claims of the seamen and master shall be charged against the vessel exclusively, or the freight exclusively, or both, and, if both, in what proportions against each, can be left open to be decided on the hearing of the libel filed by Patrick. This will do substantial justice to all parties, and an order for payment will be made accordingly.