## THE HUDSON.

### (*District Court, S. D. New York.*    February 7, 1883.)

1. COLLISION—SEVERAL VESSELS—JOINDER IN ONE SUIT.
    Where several vessels are alleged to be in fault in causing a collision by which the property of a third person is injured, in a libel by the latter to recover his damages, all the vessels in fault should be proceeded against as defendants to avoid multiplicity of suits, and to enable the damages to be justly apportioned among those liable according to the law in admiralty.

2. SAME—VESSELS BROUGHT INTO SUIT BY FURTHER PROCESS.
    If in such a suit the libelant proceeds against one vessel only, it is competent for the district court to award its further process in the cause, upon the petition of the vessel sued, for the arrest of the other vessel to answer for its share of the damage.

3. SAME—APPORTIONMENT OF DAMAGES.
    Under the recent decisions of the supreme court the right to an apportionment of the damages between the vessels liable to third parties, in a case of collision, is a substantial right which cannot be suffered to depend upon the caprice, the mistake, or the collusion of the libelant in suing one vessel only.

4. DISTRICT COURT—PRACTICE AND PROCEDURE.
    In cases not provided for by the supreme court rules in admiralty, it is competent for the district court to regulate its own practice, and to allow remedies according to the analogies of admiralty procedure, as new exigencies arise, as the court may deem necessary for the due administration of justice.

5. SAME—BRINGING IN THIRD PARTIES.
    Under the English judicature act of 1873 it is the constant practice, at the instance of the defendant, to bring in third persons as parties to be bound by the judgment, where they have a common interest in the subject-matter of the litigation, or in the question of liability to be determined.

6. SAME—APPLICATION TO COLLISION CASES.
    Collision cases in admiralty present an aggregate of features which make them *sui generis,* and the due administration of justice renders it essential and expedient in this class of cases that the liability of all persons or vessels involved should be determined in a single action, rather than in successive independent suits.

Motion to Bring in Another Vessel as Defendant.

*Edward D. McCarthy,* for libelant.

*Benedict, Taft & Benedict,* for the Hudson.

BROWN, J.    The libel in this case was filed against the steam-tug Hudson to recover damages for an injury by a collision to the

libelant's barge, which was in tow of the steam-tug E. A. Packer. The latter tug not having been joined in the suit, and being alleged by the claimants of the Hudson to be chargeable with fault contributing to the collision, the claimants have filed a petition praying that the E. A. Packer may be brought in as a party to the action, in order that the damages may be apportioned between the two tugs, as would have been done had the E. A. Packer been joined as a party and adjudged in fault.

The motion is opposed by the libelant, not merely on the ground of laches, but upon the broader ground that, if the claimants have any right to contribution it must be sought by their own independent suit against the E. A. Packer after paying the libelants, and that the court cannot compel the libelants to sue parties whom they do not deem in fault, nor bring in another vessel at the instance of the owners of the vessel sued alone.

The question involved is one of great practical importance since the decision in the case of *The Atlas*, 93 U. S. 302. This court has had frequent occasion to regret its own adjudications, imposing upon one vessel alone the whole burden of the damage, where another vessel, not a party, appeared to be equally, and sometimes more, in fault. If applications like this can be granted, then a speedy, convenient, and effectual remedy will be provided, whereby the rule in admiralty in collision cases which apportions the damages between two vessels, which are both in fault, can be applied, and equity will be administered in the sense of the admiralty law. If such applications cannot be granted, then this rule of the admiralty is liable to be defeated, or greatly embarrassed in its effectual and practical application, either through mistake, collusion, or the arbitrary caprice of any libelant who chooses to sue one vessel only, and to insist on recovering his whole damages from that vessel alone. For even if the latter, after being found liable, and after paying the whole loss, would have a legal right to recover contribution by direct action against the other vessel through subrogation to the libelant's lien, still this remedy would in many cases become practically worthless through the intervening delay, the loss of the other vessel, the accumulation of superior intervening liens, or her absence from the jurisdiction; while such a remedy, if still available, would involve a trial by the court of the whole case *de novo*. If, therefore, in collision cases, two vessels liable to a third party have in admiralty any legal right of contribution, *inter sese*, for the payment of the damages, it is manifestly more effectual and more convenient to bring both vessels into the cause at

the outset; and if the libelant does not do that, to permit the vessel sued to cause, it to be done, if it be competent for the court to afford that remedy.

In the English practice, the libelant in such cases recovers of the vessel sued alone only half his damages. This rule, first established by Dr. LUSHINGTON in the case of *The Milan*, Lush. 401, has been repeatedly followed since, and has been lately (1878) affirmed in the court of appeal in the case of *The City of Manchester*, L. R. 5 Prob. Div. 221. The same rule was applied in this country in the district and circuit courts, (*The Atlas*, 4 Ben. 27; 10 Blatchf. 459; *The City of Hartford*, 11 Blatchf. 290;) but on appeal to the supreme court in the case of *The Atlas*, 93 U. S. 302, where only one of two vessels liable was sued, the decision of the court below was reversed, and a decree directed in favor of the libelant for his entire damages against the vessel sued, on the ground that each vessel, as a wrong-doer, must be held liable to innocent third parties *in solido* for the whole loss.

This decision, however, was not designed to affect, and does not affect in any degree, the right of the owners of the several vessels liable to have among themselves an apportionment of the damages whenever all the parties are before the court. The rule in the admiralty in cases of negligence, as is well known, is in direct opposition to the rule of the common law. By the latter, if the plaintiff be guilty of negligence, he recovers nothing; while in admiralty the damages, whether to the libelant's vessel or to the claimant's, or to the cargo of either, are apportioned equally between the vessels in fault. And where the innocent owner of the cargo, or of a tow in charge of one vessel, sues and recovers against both vessels, the libelant cannot recover a judgment *in solido* against both for his whole damage, with a right to levy his execution in full against either alone, as at common law, but only a judgment for a moiety of the damages against each vessel, with an alternative right of recourse against either for so much of the moiety adjudged to be paid by the other as he is unable to collect from the latter. This principle, first sanctioned by the judgment of the supreme court in the case of *The Washington and the Gregory*, 9 Wall. 513, 516, was afterwards, upon full deliberation, reaffirmed in the case of *The Alabama and the Gamecock*, 92 U. S. 695, and has been repeatedly asserted in subsequent cases. *The Virginia Ehrman*, 97 U. S. 317; *The City of Hartford*, 97 U. S. 329, 330; *The Atlas, supra*; *The Civilta*, 103 U. S. 699.

In the case of *The Alabama and the Gamecock, supra*, the district

court had rendered a decree against both vessels for the whole damage *in solido*. The circuit court reversed this, and rendered a decree against each for a moiety only. The supreme court reversed both, and directed a decree for a moiety against each vessel, with an alternative provision to the effect above stated.

No more express affirmance could be made of the legal right of the owners of the several vessels liable for the same collision, to have an apportionment of the loss among themselves whenever both are before the court, even as against a libelant without fault; for the court reversed the decrees below for no other purpose than to give effect to such an apportionment, so far as it could possibly be done consistently with the libelant's right, as against both, to make sure of the recovery of his whole loss.

The same principle was applied in this circuit upon an appeal heard by the chief justice in the case of *The Eleanora*, 17 Blatchf. 88, where two libels were filed against the steam-ship for a collision,—one by the owners of the schooner Transit, the other by the owners of the cargo. The cases were submitted to the court on the same evidence. Both vessels were found to have been in fault, and the damages in the schooner's suit were apportioned, while the owner of the cargo had judgment for his whole damages against the Eleanora, which he had sued alone; but in order to compel the schooner to pay the one-half of the damages in the latter suit, as she was "equitably bound to do," though she was not a party to that suit, the court decreed that the Eleanora should, in the schooner's suit, be credited with the one-half of what in the other suit she was obliged to pay for the loss of the cargo. The court say:

"Having all parties before it, the court may do what it would have done if there had been but one libel; that is to say, divide the damages of the collision throughout between the two colliding vessels. * * * The fund belonging to the Transit growing out of the collision is in court, and no injustice is done by using it to reimburse the Eleanora for what she has paid for the Transit on account of the mutual fault of the two vessels."

These cases show how firmly established in this country, by the highest authority, is the legal right in admiralty of the several vessels, liable for the same collision, to have the entire loss and damages apportioned equally among them, so far as such an apportionment can be made without injury to the libelant, whenever the parties are before the court, or whenever there is any fund which the court can lay hold of and make tributary to such an apportionment. The right of contribution is thus affirmed, it seems to me, as a substantial legal

right, and as such it is entitled to all appropriate and expedient remedies. In effect, while the libelant has a maritime lien upon each vessel *in solido* for his whole damage, so that both are liable jointly and severally as principals, yet, as between themselves, the several vessels liable are virtually in the situation of sureties for each other for the payment by each of one-half the damages; and each vessel, like other sureties in equity, has such a legal interest in the libelant's enforcement of his lien upon the other, that the court must by its decree carefully protect this interest whenever the parties are before it, and on failure to do so its decree will be reversed.

From this well-settled recognition and enforcement of a right of contribution as a substantial legal right, when the parties are before the court, it would seem to result necessarily that if only one vessel is sued, where another is equally liable, either an independent suit for contribution must be allowed to the latter, or else the other vessel must be brought into the original cause, if that can be done without any substantial injury to the libelant. It would be a gross anomaly to say that the court must, by its decree, recognize and enforce a right of apportionment between several vessels defendant, if they all happen to be parties, but yet has no power to bring in one of them if absent, or to afford a several remedy against it. If the right of contribution depended wholly upon the libelant's happening to sue both vessels instead of one, instead of being a legal right it would be but a mere accident in the cause, dependent solely upon the libelant's option. But I cannot for a moment conceive either that the supreme court would guard and enforce with so much care a right which depended upon accident merely, or that so important and valuable an interest as the right of apportionment in collision cases, where the pecuniary interests involved are usually large,—often amounting to tens or even hundreds of thousands of dollars,—can be suffered to depend upon the arbitrary choice of the libelant as to whether he will sue one or both vessels, or upon his mistake or misapprehension of the facts in supposing only one vessel instead of both to have been in fault; and still less, upon his possible collusion with one of the vessels liable to throw the whole burden upon the other.

The due administration of justice and the reasons for the rule of apportionment forbid any such result. "The moiety rule," says BRADLEY, J., in delivering the opinion of the supreme court in the case of *The Alabama*, 92 U. S. 697, "has been adopted for the better distribution of justice among mutual wrong-doers." Judge NELSON, in *The Catharine*, 17 How. 178, says "this rule is most just and

equitable, as best tending to induce care and vigilance in navigation;" and Judge DRUMMOND adds, in the case of *The Swan*, 6 McLean, 295, that under this rule there will be "less effort and less temptation by corrupt and unfair means to misrepresent and distort the facts." The same sense of justice and the same considerations of policy which led to the adoption of this rule, and which carefully enforce it whenever the parties are present, require that if all the necessary parties are not before the court, either a separate suit for contribution should be allowed, or else that the absent party should in some way be brought into the cause, so that this "better distribution of justice" may be effected.

In the case of *The Enterprise and the Napoleon*, 3 Wall. Jr. 58, GRIER, J., says:

"If, as between the tug and the steam-boat, the latter has been partially or entirely in fault, the owners of the Enterprise may have their remedy (*i. e.*, against the Napoleon) for the half or the whole of the damages recovered by the libelants."

It is objected "that at common law there is no contribution among wrong-doers." But not only is this wholly inapplicable to collision cases in admiralty, as we have seen, but the rule is too broadly stated, and is subject to important qualifications even at common law.

In *Arnold* v. *Clifford*, 2 Sumn. 238, STORY, J., states the rule differently. "Among tort-feasors," he says, "who are knowingly such, there can be no contribution." This rule doubtless applies to persons directly participating in or authorizing any willful trespass, or any known wrongful acts, or acts obviously of an unlawful character, and to actions involving moral turpitude, or incurring statutory penalties. *Merryweather* v. *Nixon*, 8 Term R. 186; *Attorney General* v. *Wilson*, 1 Craig & P. 1, 28; *Miller* v. *Fenton*, 11 Paige, 18; *Peck* v. *Ellis*, 2 Johns. Ch. 131; *Andrews* v. *Murray*, 33 Barb. 354; *Wehle* v. *Harland*, 42 How. (N. Y.) 399, 410. But in *Adamson* v. *Jarvis*, 4 Bing. 66, BEST, C. J., says: "The rule is confined to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act;" and it seems to be the settled law that in cases of *quasi* torts only, not involving any moral turpitude or any personal fault, or where the acts are not obviously unlawful, or the parties are not presumed to have known they were doing any wrong, or where their liability is by implication of law merely, then contribution or indemnity will be enforced. *Thorp* v. *Amos*, 1 Sandf. Ch. 26, 34; *Wooley* v. *Batte*, 2 Car. & P. 417; *Adamson* v. *Jarvis*, 4 Bing. 66; *Pearson* v. *Skelton*, 1 Mees. & W. 504; *Bett* v. *Gibbins*, 2 Adol. & E. 517; *Power*

v. *Hovey,* 19 W. Rep. 916. It is unnecessary to determine here to which of these classes of cases claims for contribution in a common law action, growing out of a collision, should be held to belong; or whether collision cases are materially distinguishable from both classes by reason of the fact that the acts of the two vessels for which they are held liable are not joint, but wholly separate and independent of each other; each vessel being held liable solely on account of its own act of negligence. But it may be remarked that, considering the fact that collisions are seldom the result of any willful wrong, the divergence between the admiralty and the common law is not essentially so great as is sometimes supposed.

It is urged that if the vessel sued alone has any right of contribution, she should be left to her own suit therefor against the other vessel or her owners, after payment of the libelant's damages. But the circumstances attending collision cases, the questions involved in them, and the matters affecting the remedies available upon them, are so peculiar that they constitute, as it seems to me, a class of cases *sui generis,* and require that, so far as possible, the determination of the question of the liability of the vessels concerned, and the relief to which either may be entitled, should be had in a single action, and not by several independent suits.

In the first place, these cases are wholly different from those in which the liability of principals or sureties is acknowledged, or based on express contract. The question of the liability of both, or either, or which one of them, is the principal question to be determined, and in most cases this can only be ascertained after a careful hearing at the trial of all the witnesses from both vessels, as well as such additional testimony as can be found. These trials, from their intricate and complex nature, the character of the witnesses, and the circumstances of doubt usually attending collisions, often in darkness, fog, or storm, are as a class among the most difficult to determine upon the facts. Though the witnesses from both are all heard, yet if but one vessel is a party, the determination reached after great labor would not be binding upon the other vessel in any subsequent suit against it. This would be the case whether such subsequent suit were brought by the libelant, who, if he fail of recovery, or of satisfaction in his suit against the first vessel, (*The Marshall,* 12 FED. REP. 921,) might afterwards sue the other, in which he is again liable to defeat, as in the case of *The Enterprise and the Napoleon,* 3 Wall. Jr. 58, though having a perfect right of recovery against the one or the other, or whether it were brought by the first vessel

sued, after being held in fault, to recover contribution from the other. If such separate suits are allowed, the court might have to decide the same question as to which vessel was in fault, in three independent actions, and each time try the whole case *de novo*: first, in the libelant's suit against the vessel sued; next, if defeated in that, in his suit against the other vessel; and if that were held liable, then, lastly, in a suit for contribution by the latter vessel against the first; and in the last suit the decision might be unavoidably the reverse of the first; for in none of these separate suits would the evidence taken in one be receivable in the other. *The Enterprise*, 3 Wall. Jr. 58, 64.

The court ought not to be liable, as a rule of practice, to be called on to try and determine actions of this character twice or thrice upon the facts, in as many independent suits. The testimony of the witnesses, moreover, whose lives are chiefly upon the sea, is often difficult to be procured. From their roving character, after a short time all trace of them is often lost, and a subsequent suit for contribution involving the trial of the whole question of liability *de novo* would have little chance of justice through the probable loss of material evidence on the one side or the other. A vessel, also, which is within the jurisdiction to-day and available to answer for her liability, may be gone to-morrow and never return; or, if she does return, may be so burdened by later maritime liens having priority, as to be no longer responsible; while, if the liability of her owners *in personam* should be looked to, the act of 1851, limiting liability to the value of the vessel itself, would often, after a short time, render this remedy wholly unavailing for purposes of contribution, through her loss, or the accumulation of liens upon her having priority through her subsequent navigation. And even if the remedy against the other vessel, or her owners, for contribution, were still available, and the same witnesses were still procurable, the liability to perversions of the truth in any subsequent suit after the decision of the court had once been made known upon the facts of the case, would be so great, considering the witnesses in such cases; the difficulties of the trial would be so greatly increased through the varying testimony; and contrary judgments as to the same collision would sometimes be so unavoidable, that the result of the practice of admitting successive independent suits concerning the same collision could hardly fail to discredit the administration of justice.

In these respects, collision cases in admiralty constitute, as it seems to me, a class of cases by themselves, and even if an independent suit for contribution after payment would lie, still the court ought

for the above reasons to encourage, if not absolutely require, any such relief to be sought so as to be heard and decided with the original cause.

In common-law actions, doubtless, a plaintiff cannot ordinarily be compelled to sue a person against his will; and as no relief is given by a common-law judgment between joint defendants, and as a plaintiff may collect his claim in full from either judgment debtor, such a judgment would be of no benefit to a co-defendant, and the introduction of co-defendants when the liability is several, has, therefore, never prevailed. *Sawyer* v. *Chambers,* 11 Abb. 110; *Webster* v. *Bond,* 9 Hun, 437.

But in equity the rule has been otherwise; and that court has always had and often exercised the right to cause all necessary parties to be brought into the cause, at the instance of either party, or of its own motion. In equity, a plaintiff is not allowed to enforce even legal rights to the prejudice, unnecessarily, of the defendant. Where the plaintiff has two funds legally applicable to his demand, the owner of one of them proceeded against may compel a resort first to the other fund for satisfaction, if, as between the two funds, the defendant has an equity to have the other first applied to the debt. *The Sailor Prince,* 1 Ben. 461, 465; 1 Story, Eq. §§ 633, 638; *Ingalls* v. *Morgan,* 10 N. Y. 178, 186, and cases cited.

The general rule as to parties in equity is that all persons interested in the subject-matter of the controversy, between whom there is any recognized right of contribution, are necessary parties. Judge Story, in his work on Equity Pleading, repeatedly states this general rule. In section 162 he says:

"The same principles apply to persons who are affected by a common charge or burden; for, ordinarily, they must all be made parties, not only for the purpose of ascertaining and contesting the right or title to it, but also for the purpose, if it should be established, of a contribution towards its discharge among themselves."

In section 138 he says:

"If the defendants actually before the court may be subjected to undue inconvenience, or to danger of loss or to future litigation, or to a liability under the decree more extensive and direct than if the absent parties were before the court, that of itself will, in many cases, furnish a sufficient ground to enforce the rule of making the absent persons parties."

The language of this section is peculiarly applicable to the class of cases under consideration. In the case of *Caldwell* v. *Taggart,* 4 Pet. 190, 202, the general rule is laid down thus:

"However numerous the persons interested in the subject of a suit, they must all be made parties plaintiffs or defendants, in order that a complete decree may be made, it being the constant aim of a court of equity to do complete justice by embracing the whole subject, deciding upon and settling the rights of all persons interested in the subject."

See, also, *Story* v. *Livingston*, 13 Pet. 359, 375.

And the same rule formerly applied in equity to joint and several contracts. The creditor was required to "bring all the debtors before the court, principals as well as sureties; for no account taken would be binding upon an absent party, and consequently no complete decree could be made. Besides, the debtors are entitled to the assistance of each other in taking the accounts, and when one has paid more than his share of the debt, he is entitled to a contribution from him who has paid nothing, or less than his share; and by making all the debtors parties, the circuity of another suit for contribution is thereby avoided." Pitman, Prin. & Sure. 125; Story, Eq. Pl. § 169; Willard, Eq. 108. This rule, declared by Lord HARDWICKE in *Madox* v. *Jackson*, 3 Atk. 406, and reaffirmed by Lord ELDON in *Cockburn* v. *Thompson*, 16 Ves. 326, remained the practice in chancery until modified by a rule adopted in 1841, (see 1 Craig & P. 377,) and by the supreme court in the same language in 1845, as rule 51 in equity, allowing in these cases a several action. *Angerstein* v. *Clarke*, 3 Swanst. 147; *Haywood* v. *Ovey*, 6 Madd. 78; *Bland* v. *Winter*, 1 Sim. & S. 246; Calvert, Parties, 235.

The general rule in equity, requiring the presence of all parties interested, was established for convenience in the administration of justice, (*Cockburn* v. *Thompson*, 16 Ves. 326; *Wiser* v. *Blackly*, 1 Johns. Ch. 437,) and the modification of it in cases of joint and several contracts was adopted, doubtless, because the reasons for it in these cases were not deemed urgent, and because in such cases the liability of the several obligors, principals or sureties, not being usually in dispute, a separate suit for contribution would not, ordinarily, be attended with any special difficulties. The exception, however, proves the general rule, and in all other cases in equity the rule is that where there is a common burden to which several ought in equity to contribute, all who are within the jurisdiction and solvent must be made parties, for the enforcement of contribution and to avoid circuity of action. Adams, Eq. 270, and cases cited.

The same considerations of convenience which led to the establishment of the general rule in equity, and to its modification in the case of express contracts of joint and several liability, would seem to me

to require this court in collision cases, for the several reasons above stated, to administer relief, so far as possible, in the same action, rather than to entertain separate suits.

In equity new defendants might be introduced by the complainant by an amended or supplemental bill, while the ordinary course of a defendant at law seeking relief as to the same subject-matter against other persons not defendants was by a cross-bill in equity, filed by himself against the plaintiff, with the additional defendants desired. *Mitchell* v. *Lenox*, 2 Paige, 280; *Livingston* v. *Gibbons*, 4 Johns. Ch. 94; *Ensworth* v. *Lambert*, Id. 605; *McGowan* v. *Yorks*, 6 Johns. Ch. 450; *Webster* v. *Bond*, 9 Hun, 437, 440.

A cross-libel, filed by the owners of the vessel sued against the original libelant *in personam*, and the other vessel *in rem*, would be analogous to such a cross-bill in equity. But this would involve an improper joinder of parties, under rule 15 of the supreme court; nor, if such a cross-libel were permissible, do I perceive in it any advantage over a direct introduction of the other vessel into the cause on the petition of the one sued, to which there is no rule opposed; and if there were two such suits by cross-libel they would be heard together and practically consolidated.

It is questionable whether this court could properly compel the libelant, through a stay of proceedings, to add another vessel as defendant, considering the decree in the case of *The Atlas;* since, in that case, the district court gave the libelant time to bring in the other vessel, and only after he had declined to do so gave judgment for half the damages, (4 Ben. 38;) yet, notwithstanding this fact, the supreme court held the libelant entitled to recover his whole damage as above stated. It is possible no ruling was intended in reference to the power to stay proceedings until the libelant should bring in the other vessel. Still there are objections to any such order against the libelant. He is required to verify his libel, and it would be improper to order him to amend it, at the instance of the defendant, by a statement of facts which he does not believe, and the truth of which, as in the present case, he denies. Moreover, as the introduction of the additional party is for the benefit of the defendant vessel, it should be at the trouble and expense of the latter for costs and damages, and upon her stipulations to the libelant and to the other vessel.

The proper remedy, which, as it seems to me, it is entirely competent to the court to afford, is to issue process in the original action for the arrest of the other vessel upon the petition of the owners of the vessel sued, setting forth, with the same particularity as would be required

in the original libel, the facts showing the negligence of the other vessel in causing the collision by which the libelant had sustained the damage claimed in the libel. Such a petition would be, in effect, a supplemental libel, though filed by the claimants; and the claimants of the other vessel arrested would be required to make answer thereto as respects the damages alleged in the libel, and the cause would then proceed to a hearing, and a proper decree be made as respects all parties. In such cases there would be no question of the jurisdiction of the court as respects the other vessel, since that would exist by reason of the maritime lien of the libelant upon her, as set forth in the petition, and of the pendency of the cause claiming the whole damages against the vessel sued alone. The legal interest of the latter, in having the libelant's lien upon the other vessel for the same damages enforced for her own protection and partial indemnity in the pending suit, is a sufficient reason why the court should issue its process to enforce that lien. The question is one of practice merely. In all substantial respects this would conform to the ordinary course of the admiralty, and would differ only in awarding further process upon the petition of a defendant instead of a libelant. There is no question that the court would grant further process for the purpose of bringing in the other vessel at the instance of the libelant, upon an amendment of his libel, showing the fault of the second vessel; and there is no reason, in the nature of things, why it is not equally competent to the court, upon the petition of the defendant, setting forth similar additional facts, to issue similar process, when the defendant has a recognized legal right and a legal interest to be protected. In a pending cause the parties stand equal before the court; each should have as much right as the other to invoke any additional process which may be requisite and expedient for the due administration of justice in the cause, or for the protection of the rights of either.

I find nothing in the opinion of the supreme court in the case of *The Atlas* unfavorable to this application. On the contrary, from one passage in the opinion it would seem that applications of this kind were anticipated as the logical result of that decision, and of the other adjudications of the supreme court there referred to. At page 317 (93 U. S.) CLIFFORD, J., says: "Nor is it a question in this case whether the party served may have process to compel the other wrong-doers to appear and respond to the alleged wrongful act;" from which it may be inferred that the introduction of the other vessel, on the petition of the one sued, was the course of procedure which naturally occurred to the mind of that able and experienced admiralty judge.

Modern practice in other courts furnishes instances of analogous procedure, in introducing new defendants at the instance of the defendant sued. All recent legislative reforms in the practice of the courts are towards simplicity and directness in the modes of relief; and this has always been the special aim of courts of admiralty.

Under the New York Code of Procedure, although a defendant cannot ordinarily bring in another defendant in order to obtain relief against him in a common-law cause, because a legal action cannot, for that purpose, be turned into an equitable one, (*Sawyer* v. *Chambers*, 11 Abb. 110; *Webster* v. *Bond*, 9 Hun, 437;) it is different in equitable actions; and even at law, when an interpleader is desired, and where a separate bill in chancery must formerly have been filed by the defendant for that purpose, the same relief is now obtained by order of the court upon the motion or petition of the defendant sued, and the further process of the court is issued at the defendant's instance, and the third party thereby brought in as a defendant. Code, § 820. That practice existed also under earlier English statutes; and now, under the English judicature act of 1873, it is provided generally (section 24, subd. 3) that her courts, "and every judge thereof, shall have power to grant to any defendant, in respect to any equitable estate or right, or other matter of equity, * * * all such relief relating to or connected with the original subject of the cause or matter, and in like manner claimed against any other person, whether already a party to the same cause or not, who shall have been duly served with notice in writing of such claim, pursuant to any rule of court, as might properly have been granted against such person if he had been made a defendant to a cause duly instituted by the same defendant for the like purpose, and every person served with any such notice shall thenceforth be deemed a party to such cause or matter," etc. 7 Jacob's Fisher's Dig. 10619.

Under this act orders and rules have been framed under which, though they are not as broad as the act authorizes, it is the constant practice to introduce third persons into a cause by notice and order, at the instance of the defendant sued; so that all persons liable for the same matter, in whole or in part, may be bound by the judgment in a single action, and that there may not be independent trials of the same matter and possibly conflicting judgments. "The intention," says Brett, L. J., in *Turner* v. *Hednesford Gas Co.* L. R. 3 Exch. Div. 145, 151, is "to settle in one litigation all questions arising out of the subject-matter of the dispute." In *Benecke* v. *Frost*, L. R. 1 Q. B. Div. 419, 421, Lush, J., says: "Undoubtedly one of

the questions is identical as between the plaintiff and defendants, and as between the defendants and Messrs. Thew; that is precisely the case in which third parties are to be cited so that they may be bound by the decision in the action;" and BLACKBURN, J., adds: "The object of the act was not only to prevent the same question being litigated twice, but to obviate the scandal which sometimes arose by the same question being differently decided by different juries." In *Ex parte Smith*, L. R. 2 Ch. Div. 51, 54, MELLISH, L. J., says: "There would be risk of the question being decided in different ways in the two proceedings (if the other party were not brought in) which would produce great injustice."

A case in the admiralty division is reported in 37 Law T. Rep. 505, in the case of *The Sarpendon*. See, also, Wilson's Judicat. Act, 234 to 251, Ord. 16, rule 13–22, Ord. 19; *Bowers* v. *Hartley*, 1 Q. B. Div. 652; *Dear* v. *Sworder*, 4 Ch. Div. 476; *Swansea* v. *Duncan*, 1 Q. B. Div. 644, 649; *Padwick* v. *Scott*, 2 Ch. Div. 736, 742; *Hornby* v. *Cardwell*, 8 Q. B. Div. 329; *Schneider* v. *Batt*, 8 Q. B. Div. 701; *Piller* v. *Roberts*, 21 Ch. Div. 198. In *Horwell* v. *London Omnibus Co.* 2 Exch. Div. 365, where the defendant was sued at common law for negligence in driving an omnibus, a third party alleged to be also liable was sought to be introduced as a defendant under this practice. A majority of the court on appeal disallowed it, but on the ground that if the third party were found liable along with the defendant, that "would do the defendant no good," because at common law there was no contribution between them. This, as we have seen, has no application in admiralty. In the case of *Hornby* v. *Cardwell, supra,* Lord Justice COTTON says, (p. 338:) "The combined effect of these rules and orders is that a third party, when joined as such, becomes a party to the cause, with all the liabilities of a party."

As I have said above, the form in which relief in these cases should be afforded is a question of practice merely. Powers as ample as legislation can give are conferred by law on the district court in cases of admiralty and maritime jurisdiction as to the "forms and modes of proceeding," and "such alterations or additions thereto as the said courts shall in their discretion deem expedient," and "to regulate the practice as shall be fit and necessary for the advancement of justice," subject only to any existing provisions of law or the rules established by the supreme court. Rev. St. §§ 913, 918; 1 St. at Large, 276; Act 1792, *c.* 36, § 2; Id. 335; Act 1793, *c.* 22, § 7; *Steam Stone Cutter* v. *Jones*, 13 FED. REP. 568, 577–581. The words

."modes of proceeding" in these acts, says MARSHALL, C. J., in *Wayman* v. *Southard*, 10 Wheat. 32, "embrace the whole progress of the suit, and every transaction in it." The admiralty rules adopted by the supreme court do not provide for the case here presented; and by rule 46 the pre-existing powers of the court in such cases are expressly recognized and affirmed to regulate its practice in admiralty "in such manner as it shall deem most expedient for the due administration of justice." *The Zenobia,* 1 Abb. Adm. 48, 52–55; *U. S.* v. *Stevenson,* 1 Abb. (U. S.) 495–501; *Louisiana* v. *Nickerson,* 2 Low. 310, 314. See, also, per BRADLEY, J., in *Reynolds* v. *Vanderbilt,* 5 Morr. Trans. 48, 59, 60; *The Monte A.* 12 FED. REP. 331, 336. See, also, *Stoomvart, etc.,* v. *Navigation Co.* L. R. 7 App. Cas. 795, 806, 820.

Holding, therefore, as I feel bound to do, under the decisions of the supreme court, that in this class of cases a vessel sued alone is entitled to contribution or an apportionment of damages as a substantial right as against another vessel equally liable, and to some mode of relief by which that right may be made available and effective, I think relief by further process against the other vessel upon the petition of the one sued, as above stated, is at once the most expedient, the most direct, and the most effectual, while it does not interfere with any substantial rights of the libelant, nor impose upon him any additional burdens, embarrassments, or obligations on the trial of the cause. If the libelant may be subjected to the additional liability of an appeal by two defendants instead of one, this consideration is, it seems to me, quite overborne by the far more urgent considerations which require the rights of the parties, in this class of cases, to be heard and adjudicated in the same cause in accordance with the general rule in equity and the practice approved by modern legislation. The libelant's right is not a right by any express contract, and it should be administered with due regard to the rights of others; and this requires, in the peculiar and exceptional class of cases under consideration, that any other vessel liable for the same damages should be brought into the cause, if application therefor be made. Such application, to avoid embarrassment to the libelant, should, ordinarily, be made before answering, unless the delay be excused.

In the present case, as the question is new, the application will not be denied on the ground of laches; but special terms will be imposed, which may be suggested by the libelant on the settlement, on notice, of an order in conformity with this decision.