## Case No. 4,497.

The ENTERPRISE.

[2 Curt. 317.] [1]

Circuit Court, D. Massachusetts. May Term, 1855.

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

, Mr. Webb (with whom was R. H. Dana, Jr.), for appellants.

C. G. Thomas, contra.

CURTIS, Circuit Justice. This is an application to this court for leave to enter an appeal, the district court having refused to allow it. The transcript of the record of the district court, which is produced, shows that James Hagan and two otner seamen. filed their libel in that court, in a cause of subtraction of wages, alleged to have been earned on board the schooner Enterprise; and prayed that the court would pronounce for the wages claimed, and for a warrant to arrest the vessel, and for relief, generally. The vessel having been arrested, Stephen Pember, intervened for his interest in the vessel, stipulated, with sureties, in the sum of two hundred dollars, to pay costs and expenses which might be awarded against him ·on the final, or any interlocutory decree, and thereupon was admitted to contest the suit, and answered the libel. Upon a hearing, a de-· cree was made in favor of each of the libellants for wages, amounting to the sum of more than fifty dollars. On the same day, namely, the 11th day of December, 1854, an appeal was claimed by and allowed to the claimant Pember. Two days afterwards, the libellants moved for an order of sale, ·the claimant assented, and the court ordered it, and a sale was made for the sum of one hundred dollars, the expenses of the sale being eleven dollars, and the other fees and charges of the marshal in arresting, keeping, and giving notices concerning the arrest of the vessel, amounting to seventy-five dollars 10-100. Deducting all these, the marshal paid the balance, thirteen dollars 90-100, into court. Thereupon the libellants moved that, as it then appeared that the vessel sold for only one hundred dollars, and that all but

thirteen dollars 90-100 of this was exhausted in costs and charges, the order allowing an appeal should be rescinded, and it was rescinded accordingly. The claimant now insists on his right to an appeal, and moves this court to direct the clerk to enter it, and produces a transcript of the record of the district court, made out pursuant to the late. rule of the supreme court in that behalf.

The right to an appeal, being conferred by an act of congress, an erroneous refusal by the district court to allow it cannot deprive a party of that right. This court must review such refusal, and ascertain whether it was lawful; and if it finds the right exists, effect must be given to it, by directing the clerk to enter the appeal, on proper security being given, when required, and by proceeding, in due course, to hear and consider it. Indeed, the action of the district court in allowing or refusing to allow an appeal, should have no effect in this court, except to impose on the party against whose claim such order is made, the burden of moving this court on the subject. If the appeal was unlawfully allowed below, it must be dismissed here; if its allowance was unlawfully refused below, it must be allowed here, on motion being made. In the case of The New England [Case No. 10,151], Mr. Justice Story seems. to have thought a mandamus to the district court might be necessary; but it does not seem to me to be so, except for the purpose of staying an execution where a party is entitled to a supersedeas, and I should doubt its necessity even then. I apprehend that what is in dispute in this case, is not the vessel, or even the existence of a lien thereon as. a security for any wages which may be due; but it is whether any wages are due, and if any, what is their amount. It is true, the libellant cannot, in this case, have a decree in personam. But the record shows that Pember, the claimant, was an owner of the vessel during the voyage for which wages are claimed. In that character, he contests the right of wages by his answer. The decree of the district court pronouncing for wages exceeding fifty dollars, binds him personally as res judicata. A libel in personam, against him, would lie to execute that decree. The very celebrated case of Penhallow v. Doane's Adm'rs, 3 Dall. [3 U. S.] 54, was a libel in personam, to enforce a decree in rem. Indeed, where there appears upon the record a clear right to recovery against one who has appeared and contested the suit, it has been in conformity with the practice. of some courts of admiralty to allow the libellant to proceed to a decree in personam. Ben. Ad. 301. A suit for wages may be both in rem and against the master personally, by force of the 13th rule prescribed by the supreme court; but, I should understand, not against the vessel and the owner in personam. But after a decree in rem in a suit contested by an owner personally liable, I should hold him bound, in a suit in personam.

founded on the decree, and showing that the proceeding in rem failed to procure payment. And therefore I think, in this case, the wages, which exceeded fifty dollars, were the matter in dispute, and that the claimant had a right to appeal.

This appeal having been entered, was heard, in connection with another appeal, in a suit instituted by the same libellants and one other seaman, against the owners in personam to recover the same wages which were the subject of the suit in rem. The reason for the libel in personam was, that the proceeds of a sale of the vessel left only thirteen dollars, after the payment of expenses, to be divided among the libellants.

CURTIS, Circuit Justice. In both these suits the same question arises, whether the libellants are entitled to wages, or are bound by the articles which they signed, and under which they were to receive lays or shares, of the proceeds of the fishing voyage. If the confessions of the master are admissible in evidence, it is shown, as to all the libellants, that they shipped on wages and signed the articles, only because the agent of the owners requested, without their being read to them, and with no intention of varying the oral contract for wages. If these confessions are not admissible, the proof, as to some of the libellants, fails. I am of opinion they are admissible. It has been argued that the master is but the agent of the owner, and that to render his admissions evidence against the owner they must be made in the course of the execution of his lawful authority, and as part of the res gestae. This is the ordinary rule. But the admiralty treats the master's declarations as standing on different ground from those of a common agent. He is himself liable personally for the wages. He thus stands in the relation of a principal debtor, liable for the same debt to which the owner is subject. And even where there is no liability ex contractu, I apprehend the confessions of the master, though not those of a mate, pilot, or seaman, have been constantly received in evidence by courts of admiralty. In The Manchester, 1 W. Rob. Adm. 63, Dr. Lushington allowed them to be pleaded in a cause of collision, and he made a similar decision in The Midlothian, 5 Eng. Law & Eq. 556, distinguishing in this latter case between the master and the seamen. See, also, The Lord Seaton, 2 W. Rob. Adm. 391, 394; The Europa, 13 Jur. 856. I am not aware that the question has been discussed in this country, but I am quite sure the practice has been to admit declarations made by the master, while in command, concerning any matters which came under his authority as master, though not part of any res gestae strictly speaking. I have therefore looked at the testimony of the master's declarations, made before any lis mota, and bearing

in mind that the owners have not called him, either to deny or explain them, and considering the surrounding circumstances, as well as the direct and positive evidence which is applicable to the contracts of three of them, I am of opinion the libellants are entitled to wages, and the decrees of the district court in both cases must be affirmed, with costs. In the suit in personam damages at the rate of six per cent. per annum should be added.

In the suit in rem, numerous technical objections were taken to the admissibility of the depositions sent up to this court from the district court. I consider these depositions to have been taken as further proof, under the rule of the supreme court on that subject. The captain rightly describes the suit as pending in the district court, for the order allowing an appeal had been rescinded, when the depositions were taken. The proctor for the respondents appears to have had all the notice to which he was entitled, and the depositions were begun on the day named in the notice, and finished on the next day.

In the suit in personam, it appears by the record that a decree was originally made to take the libel for confessed, and for the wages, upon a default to appear and answer on the 29th of December, 1854; and that on the 28th day of February, 1855, after the court had adjourned without day, leave was given to file a libel of review, which was answered, the decree by default set aside, and the respondents allowed to answer and contest the claim. And it was made a question by the libellants at the hearing before me, whether the district court had power to entertain the libel for a review. It is certainly a very grave question (The New England [supra]; Adm. Rules xxix., xl.), but I do not perceive how the libellants, who did not appeal, can raise it. The decree finally made by the district court was the same as the decree made on the default. The libellants, therefore, had no cause to complain; at all events they did not appeal from any part of the proceedings. Upon the appeal of the respondents I do not think I can inquire into the correctness of these preliminary proceedings, when I am satisfied that the only decree appealed from, was correct and should be affirmed.