ORIANA, The. See Cases Nos. 1,148 and 1,150.

———

## Case No. 10,569.

### The ORIENT.

[10 Ben. 620; 14 Am. Law Rev. 84.][1]

District Court, S. D. New York. Nov. 8, 1879.

PRIORITIES—SEAMEN'S WAGES — COLLISION —FOREIGN VESSEL.

1. The wages of seamen have a priority over a claim for collision against the proceeds of their

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission. 14 Am. Law Rev. 84, contains only a partial report.]

vessel, whether such wages were earned prior or subsequent to the collision.

See The Pride of the Ocean, 7 Fed. 247.

[Cited in The Adolph, 7 Fed. 505. Approved in The Samuel J. Christian, 16 Fed. 797. Cited in The Young America, 30 Fed. 795; The Amos D. Carver, 35 Fed. 667, 669; The Daisy Day, 40 Fed. 539. Cited contra in The F. H. Stanwood, 49 Fed. 581.]

2. Whether the same rule would be applied in the case of a foreign vessel, quære.

3. But, if it would, a vessel owned in New Jersey is not such a foreign vessel as to call for the application of any different rule.

In admiralty.

R. L. Niles and F. A. Wilcox, for libellants.

E. D. McCarthy and W. Mynderse, for intervenors.

CHOATE, District Judge. This is a suit for seamen's wages, and after default of the owners of the steamer and a decree in favor of the libellants but before the sale of the vessel, the insurers on the hull of a canal-boat which was totally lost by a collision with the Orient while the canal-boat was in tow of another steamer, applied by petition for leave to intervene for their interest and to have the decree opened and to be allowed to defend. They claim that the Orient is responsible for the collision on the ground of negligence; that the value of the Orient is not sufficient to pay in full the seamen and the claims for damage caused by the collision, and that in such a case the lien of the party injured has a preference over the lien of the seamen. The petitioners have paid the loss and are subrogated to the rights of the owner of the canal-boat. Another libel is pending in this district against the Orient, filed by the master of the canal-boat on behalf of himself and the owners of the cargo, and is now prosecuted on behalf of the underwriters on the cargo. The petitioners have been allowed to file an answer to the libel of the seamen, denying that the amounts claimed are due to them. This question has, however, been now heard and the wages are shown to be due to the libellants as follows: Willetts, $47.50; Collins, $94.84; Murphy, $94.84; Leather, $33.81; Bills, $50; Schreier, $50, in all $370.99. The collision happened September 25th, and the vessel was seized by the marshal on process from this court October 11, 1879. The wages due were earned partly before and partly after the collision.

The petitioners have an interest, which, if they have a prior lien to the seamen, would require that the proceeds of the vessel be kept in the registry of the court until the rights of the parties shall be determined. They now ask this relief in case the wages shall be found due. Several foreign decisions are cited to sustain this claim. The first is the case of The Benares, 7 Notes of Cas. (Supp.) 50. This was an action for damages against the Benares by collision in which bail had been given for the ship and also for the freight. And the question arose, on a motion that the bail should pay the amount of the freight into the registry, whether the amount, to be paid in under the English act limiting the liability of the owners, was the gross freight or the net freight. The owners claimed that they should deduct from the freight all the expenses of the voyage, which was to India and back to England, including the whole amount of seamen's wages. And it was held that the statute intended by "freight due or to grow due for and during the voyage" the entire freight; that this expression could not be construed to mean the freight, less those expenses usually paid out of it or for the payment of which there was a lien on the freight. There was no claim of seamen here competing with the claim of the party injured by the collision, but simply a claim of the owners who had paid wages to deduct them from the freight which had been attached. The question which would be the superior lien did not arise in the case, and the opinion of Dr. Lushington seems not to touch that question. There is not even a dictum in the case adverse to the seamen's lien for wages in such a case, as I understand the decision. The case of The Linda Flor, Swab. 309, is the only other reported English case cited. It was a suit for mariners' wages against a Portuguese ship, and the claim was opposed by a party who had obtained a decree against the vessel in a cause of damage, the proceeds being insufficient to meet all the claims. Dr. Lushington held that in such a case, there being no evidence that the foreign owners were insolvent, the injured party who had obtained a decree should be paid out of the fund in preference to the seaman. He applied to the case the equitable doctrine which governs cases of marshalling assets between competing claimants, that a party who has two funds to resort to shall, as against a party having only one of those funds to resort to, be remitted to the fund to which the other party cannot resort. And as the seamen could resort to the personal liability of the owners in their own country, which was assumed by the court to afford no practical remedy of any actual value to the other claimant, they should be compelled to do so; that in such a case to permit the seamen to reduce the only fund to which the injured party could resort would be merely to benefit the owners and relieve them from a part of the liability which the law imposed on them for the injury inflicted by them. I think this is the point of the decision. The learned judge indeed adds that "it is not to be forgotten that in all these cases of damage, or nearly all, the cause of the damage is the misconduct of some of the persons composing the crew." I do not understand the de-

cision to rest in any considerable degree on this last suggestion. On the contrary, this seems to be thrown in merely as a suggestion, showing that in many cases no real injustice will probably be done by the application to a case like that before the court of the equitable doctrine of marshalling assets. The case is by no means an authority that, upon the sole ground of punishment for misconduct or retaliation, the seamen of the offending ship forfeit any of the rights which the maritime law gives them against their own vessel for their wages. Nor is this case an authority for the position that English seamen would, as against English parties suing in an English court for damage by collision, be remitted to their personal remedy against their English owners. The principle of marshalling assets would seem not to go so far. The important fact assumed by the court as existing, that the party injured would stand no chance of obtaining redress in a foreign court for any balance due to him of the owner's liability, would not exist in such a case. It could not be assumed that in an English court the party injured would not receive full justice against the owners equally with the seamen, and in such a case they would not be subjected to the expense, delay and uncertainty of a resort to a foreign tribunal, perhaps in a half-civilized country, whose law might be wholly inadequate for their relief. Dr. Lushington says, in that case, "In case of a foreign ship doing damage and proceeded against in a foreign country, the injured party has no means of redress save by proceeding against the ship herself, which I apprehend is one of the most cogent reasons for all our proceedings in rem." The only other English case cited is The Chimæra, unreported, but stated in The Linda Flor to be precisely like that case. It must be assumed, therefore, that it was the case of foreign seamen competing with English parties who had a claim for damages by collision. The case of The Duna, 13 Ir. Jur. 358, was the case of a Russian ship proceeded against in the Irish admiralty court. It was like the case of The Linda Flor and is decided on the authority of that case. In the case of The Enterprise [Case No. 4,498], the same rule was applied as against British seamen, on the ground that the law of Great Britain controlled the case. And Judge Lowell there says: "I believe no admiralty court of the United States has decided the general question of the order of priority of these liens." The equitable doctrine of marshalling assets undoubtedly prevails in admiralty courts and will be applied where its application will do no injustice. Thus even in a case of seamen's wages where there are two funds to which they can resort, as the ship and the freight, each equally available and equally certain, they may for the benefit of other parties having only a claim on the ship, be decreed to be paid out of the freight. The Sailor Prince [Case No. 12,219]. Perhaps the application of this doctrine as made in the cases of The Linda Flor and The Duna would, as against foreign seamen, be held in this country a reasonable application of that doctrine, although it remits the seamen to a remedy far less certain and expeditious than their remedy against the ship. But whether the same rule would obtain here it is unnecessary to inquire, because, as it seems to me, the principle of those cases, so far as it is a principle of the marshalling of assets, does not apply to the present case. This steam-tug was registered in New Jersey. Her owner lives in the district of New Jersey. It cannot be said that the injured party will be practically without redress there. Throughout the United States the courts are open to him as freely and with equal chance of justice as to the seamen. New York and New Jersey do not stand in this respect in relation to each other as did England and Portugal or Ireland and Russia. In the case of foreign seamen the question how far a court of admiralty shall take jurisdiction of their suit for wages, is a matter of discretion, and this being so the court is bound to look in the exercise of that discretion to the rights and interests of all other parties; and this might justify these English decisions as the rule to be applied here in the case of a foreign ship presenting the like equitable considerations for remitting the seamen to their home tribunals.

The later editions of Abbott on Shipping give some countenance to the idea that these English cases have established the rule independently of the nationality of the ship, that a lien for damage by collision takes precedence of the lien for wages, on "considerations of public policy to prevent careless navigation." Abb. Shipp. (11th Ed.) p. 621. As no other authority is cited for this proposition than the cases above referred to, I think the point cannot be deemed established by authority. Indeed, in the same work (page 633), it is admitted that "the priority of the lien for damage over liens ex contractu is not expressly declared in any of the foreign maritime codes, or discussed by the commentators upon them." The learned author then adds, "But it seems to result from the unqualified terms in which the liability of the owner of the wrong-doing vessel to the extent of the value of it, is every where laid down." With deference to the great authority of Lord Tenterden on a question of this character, I think it must be said that these dicta go far beyond any decided case. And I fail to see how the rule of the maritime law, limiting the liability of ship-owners, and especially how the statutory limitation of that liability in England and the United States, affects the question. The primary and apparently the only purpose of

these statutes, was to limit the liability of owners and not to impair the rights of any other party; and if, in consequence of other claims against the ship or freight, the injured party cannot get satisfaction out of the primary fund, that is, the ship and freight, to the extent of the statutory limit, or the owner cannot, by reason of such other claim and incumbrance thereon, surrender the thing against which the injured party has a remedy in rem in such condition as to satisfy that limited liability, I see no reason why, in cases of domestic ships, at least, the injured party should not, for the unsatisfied balance, be remitted to his personal remedy against the owner. Against this dictum I set the authority of the same author in the earlier editions of his work on Shipping. 4th Am. from 5th Lond. Ed. p. 484. "In proceeding against the ship in specie, if the value thereof be insufficient to discharge all the claims upon it, the seaman's claim for his wages is preferred before all other charges, for the same reason that the last bottomry bond is preferred to those of an earlier date. The labor of the seaman, having brought the ship to the destined port, has furnished to all other persons the means of asserting their claims upon it, which otherwise they could not have had." This doctrine seems to be well supported by authority and to be applicable as well to claims for collision as to other claims, unless this policy of retaliation or retribution for the wrong done by the ship is also a rule of the maritime law. That doctrine seems to me inconsistent with the uniform policy declared by courts of admiralty in respect to seamen's wages and to have no foundation. It is true that for misconduct towards their own ship seamen are punished by the forfeiture or diminution of wages in some cases, but both in England and the United States this species of punishment is carefully regulated by statute and strictly guarded against abuse, and these regulations have never extended to any case of misconduct except towards the seamen's own ship and her officers. To hold all the seamen of the offending ship liable to punishment by a partial or entire forfeiture of their rights would be a wholesale condemnation of innocent and guilty alike, and not in accordance with the probable facts of the case or with natural justice; and I see no such equity of the injured party, and no such controlling policy to prevent careless navigation, as to require this. Depriving seamen of their lien and remitting them to their personal action is a partial deprivation of their rights. It is in the nature of a forfeiture or punishment. The remedy to which they would be remitted is neither so certain nor so expeditious, and the rule contended for, if applied, does seriously impair the rights of seamen not shown to be personally guilty of any wrong.

By an amendment of their answer these petitioners have charged personal negligence against some of the libellants as an additional ground for giving the petitioners a priority of payment. This raises the question whether such a charge of negligence is a bar to the enforcement of the seamen's lien for wages as against the injured party. I think not. It would be in the nature of a partial or qualified set off. If these petitioners have any claim against the seamen the courts are open to them. Seamen's wages are by statute, upon reasons of public policy, scrupulously guarded against attachment and claims by way of set off. While no statute governs this particular claim, it is enough that there is no precedent for it, and that it is contrary to the general policy of the law, which secures to seamen summary and certain relief for their wages. And I am not willing to set a precedent for the trial in a case of seamen's wages of the merits of a collision suit. If this defence is good, then whenever the offending ship is not of value sufficient to respond in damages and the owners do not care to defend and are of doubtful solvency, the whole burden of defending the collision suit will be thrown on the seamen, a burden which they are ill prepared and in most cases would be wholly unable to bear. The alternative of the injured party seeking his redress in the courts against the seamen, if they are personally liable, seems to me more in accordance with justice and the general policy of the maritime law.

A manuscript opinion of Judge Giles, of the Maryland district, rendered in a case apparently similar to the present, makes a distinction between the wages earned after the collision and those earned before the collision, as to the former giving them a preference to the lien for damage by collision and as to the latter giving priority to the claim for damages. No authorities are cited. It may be presumed that the decision proceeded on the cases above referred to. For the reasons above stated I am unable to concur in that decision so far as it postpones the claims of the seamen.

Decree for the libellants, with costs.