## The Amos D. Carver.[1]

Harbinger *v.* The Amos D. Carver. Lehigh Coal & Nav. Co. *v.* Same. Heipershausen *v.* Same. Smith *v.* Same. Endicott *v.* Same.

(*District Court, S. D. New York.* June 23, 1888.)

1. Maritime Liens—Priority—Seaman's Wages—Supplies—Collision.
   A lien on a vessel for seaman's wages, and a lien for necessary repairs and supplies, outrank a subsequent lien arising from negligent collision; but will be postponed for laches in enforcing them.

2. Same—Statutory and Maritime Liens.
   In considering questions of priority of liens, a statutory lien for domestic supplies stands on the same footing as liens that are strictly maritime; and liens for ordinary repairs or supplies in harbor navigation, if furnished within the same season and within a period of reasonable diligence, are treated as contemporaneous, and, in case of deficiency, share *pro rata.*

3. Same—Enforcement—Remedies.
   Under the circumstances, a delay of less than nine months after midsummer repairs before instituting proceedings to enforce a lien therefor, *held* not to be laches; a year's delay, *held* laches, and the lien postponed.

4. Same — Marshaling Remedies—Limitation on Liability — Act June 26, 1884, § 18.
   Though contract lienors, in case of insufficiency, may sometimes be turned over to their personal remedy against the owners, in favor of a damage lienor, this is not to be applied when the owner is insolvent, or not by law liable. The act of June 26, 1884, § 18, in limiting the owner's liability "on account of the ship" to the value of ship and freight, does not affect contracts made by the owner personally, but applies only to the liability for the master's acts and contracts imposed by law on the owner, as principal, and on account of his ownership.

In Admiralty. Libels for wages and for damages.

*Alexander & Ash,* for Heipershausen.

*Jas. W. Osborne,* for Harbinger.

*Wing, Shoudy & Putnam,* for Lehigh Coal & Navigation Company.

*A. J. Heath,* for the Kate.

*Carpenter & Mosher,* for the Skidmore.

Brown, J. The first above libel was filed for seaman's wages for services on the steam-tug Amos D. Carver. The report of the commissioner in favor of the petitioner Bradley for $146.57 is sustained. This amount must have accrued during the six months after July, 1886, and should not be held lost through laches. The Carver was sold under a decree in Harbinger's suit; and, after paying the marshal's costs, as well also as the claim and costs in that suit, the remaining net proceeds, amounting to $528.86, are now in the registry of the court. The controversy arises among the other lienors in respect to these proceeds, which are insufficient to pay all. The libel of the Lehigh Coal & Navigation Company was for damages by collision to the barge Kaska Williams, belonging to that company, and to a cargo of coal laden thereon, which was in tow of the steam-tug Skidmore, which, on the 21st of Feb-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

ruary, 1887, came in collision with the barkentine Kate, in tow of the steam-tug Carver. The barge and barkentine were both injured without any fault of their own. The court on the trial held both the Carver and the Skidmore in fault, and a decree in the usual form in favor of the barge and barkentine was entered against both tugs. See N. Y. Mar. Reg. Dec. 21, 1887. The collision damages much exceed the money in court. So far as the Carver is unable to pay half those damages, the Skidmore, a valuable boat, will have to make up the deficiency, besides paying her own half of the damages. The libel of the Lehigh Coal & Navigation Company was filed February 26, 1887; the libels of Heipershausen, Horre, Zillner, Smith, Endicott, and Bradley were for wages, repairs, or supplies, and were filed afterwards in February, March, May, and June, 1887. The claim and lien of the Lehigh Coal & Navigation Company as against the Carver are for a pure tort, *i. e.*, for her towing the schooner Kate so negligently as to bring her into collision with their barge, which was in tow of the Skidmore. They claim, therefore, a lien superior to all the other liens, on the ground that a lien for collision overrides prior liens arising on contract. *The Linda Flor,* Swab. 309; *The Aline,* 1 W. Rob. 111; *Pride of the Ocean,* 3 Fed. Rep. 162. The liens of the libelants Smith and Endicott having accrued more than a year before the collision, must be held, as against the damage lien, to be superseded on account of their laches in not sooner taking any proceedings to enforce them. So much of Horre's claim as accrued more than a year prior to the damage lien is for the same reason disallowed. The balance of $29.95 accrued within three months preceding the collision. The claim of Heipershausen, to the extent of $159.98, was for repairs to the Carver between May 25 and June 4, 1886, upon a contract therefor. The Carver belonged in this port, and the repairs were made here. The lien is claimed under the state law, which was duly complied with by the libelant. Section 2 of the State Laws of 1862, c. 482, as amended by the act of April 2, 1886, c. 88, provides that "such debt shall cease to be a lien at the expiration of twelve months after the debt is contracted, * * * or, if the vessel be at that time absent, at the end of thirty days after her return." The same section requires the specifications to be filed within 30 days after the debt is contracted. *The Niagara,* 31 Fed. Rep. 163; *The America,* 16 Law Rep. 283. In considering the rank or the relative priority of these liens, or what should be deemed laches sufficient to postpone one to another, I make no difference by reason of one being a statutory lien for domestic supplies and the others being strictly maritime liens. All are treated in this district as on the same footing. *The Guiding Star,* 18 Fed. Rep. 263; *The J. W. Tucker,* 20 Fed. Rep. 134; *The Arctic,* 22 Fed. Rep. 126. In the case of *The Grapeshot,* 22 Fed. Rep. 123, 125, it was held that, as respects boats navigated in and around this harbor, where there are no well-marked divisions of the year as respects the opening and closing of navigation, liens for ordinary repairs and supplies of the same rank should be paid *pro rata* in case of insufficiency, if proceedings were taken to enforce them within a period of reasonable diligence. *The J. W. Tucker,* 20 Fed. Rep. 134. Substantially the same ruling

was made by Judge LOWELL in the case of *The Sarah J. Weed*, 2 Low. 555, 563. See, also, *The Arctic*, 22 Fed. Rep. 126, 127; *The Lady Boone*, 21 Fed. Rep. 731; *The Young America*, 30 Fed. Rep. 789, 792. Having reference to the objects of the lien law, the presumed expectation of the parties interested as to the credit intended to be given, as well also as the limitation of one year provided by the state statute for the existence of the statute liens, I do not think a period of less than nine months, as in this case of Heipershausen, an unreasonable period for giving credit to the ship before filing a libel to enforce the lien; and not such a time as should postpone it on the ground of laches to a later lien of the same rank in these harbor cases. And if it should not be postponed for laches, as respects subsequent liens of the same rank, it should not, on that ground merely, be postponed to a subsequent damage lien arising within the same period.

2. I cannot follow the case of *The Pride of the Ocean*, 3 Fed. Rep. 162, in subordinating prior liens for seaman's wages, and for necessary repairs and supplies, to a subsequent lien for collision, nor sustain the contention that the latter is superior in its legal rank. In the case of *The Orient*, 10 Ben. 620, CHOATE, J., directly passed upon this question, and upheld the priority of seaman's wages as against a collision lien. In the case of *The Samuel J. Christian*, 16 Fed. Rep. 797, BENEDICT, J., says: " I concur in the conclusions arrived at by Judge CHOATE in the case of *The Orient*," and he accordingly sustained the priority of the wages lien as against a collision lien arising on towage. In the case of *The Orient*, in which BENEDICT, J., thus concurred, the damage lien was one of pure tort, there being no contract relation between the two vessels. The case of *The Pride of the Ocean*, therefore, can no longer be regarded as expressing the opinion of BENEDICT, J., in favor of postponing a wages lien to the lien of a collision. In the case of *The Young America*, 30 Fed. Rep. 789, the question was re-examined at some length in this court, as between a lien for supplies and a damage lien arising from negligent towage. It was there observed that the English judges (*The Elin*, 8 Prob. Div. 129) had corrected the notion that damage liens, as a matter of mere legal right, took priority of contract liens, or that such was the intention of Dr. Lushington in the decisions which furnish the only ground for the misleading statements of some of the late English text-books; and, further, that the contention that damage liens were by law prior in rank to contract liens was without precedent in the general marine law, and would be subversive of its objects, and directly contrary to the universal provisions of the maritime codes. But if damage liens in general rank below contract liens for wages, bottomry, supplies, etc.,—as by the universal maritime law they assuredly do,—there is no sound reason for making an exception in the case of a pure tort; as where one vessel by collision injures another vessel, or the goods, passengers, or seamen on board the latter. The prior contract lien being viewed by our law as a *jus in re*, there is no recognized principle upon which it can be superseded through a subsequent tort of the ship, to which the prior lienor is in no way privy, and which affords him no benefit. The prior lienor, not being a party to the navigation of the ship, and in no way respon-

sible for the tort, his priority of right should be upheld, except in case of laches. *The Frank G. Fowler*, 17 Fed. Rep. 653.

Again, in *quasi* torts merely, such as negligence in the execution of *contracts* of towage, or damage to cargo on board the faulty vessel in a case of collision where the relation is one of *contract*, clearly no superiority of the damage lien over prior wages or supply claims can be admitted; and it would lead to anomalous results to recognize any superiority in the claim of the *other* vessel in collision cases, on the mere ground that there was no contract relation between the two vessels. In the present case the barge Kaska Williams had a contract for towage with the Skidmore; the Carver, a similar contract with the barkentine Kate. Each tug was guilty of negligence in navigation, and thereby violated her contract with her tow. Each tow was damaged, and each had a claim against the two tugs. If the distinction referred to were admitted, it would follow that the barge's lien against her own tug would be inferior to prior contract liens on that tug, but superior to similar contract liens against the Carver; while the barkentine's lien would be superior to such liens as against the Skidmore, but inferior to similar ones as against the Carver. So, if one vessel, negligently colliding with another, damaged the latter, and also her own cargo, the lien of the other vessel would, on the same principle, be preferred over previous bottomry given on the voyage by the offending vessel; while the damage lien of her cargo owner would be postponed to both, and he would probably get nothing. I cannot see any reason in such a distinction. In each case it is the negligence that causes the damage. Why the damage claim of the shipper who shipped his goods on board the offending vessel in the ordinary course of commerce should be held inferior in rank and merit to the claim of the shipper of cargo on board the other vessel, is not intelligible to me. The supposition that Dr. Lushington sustained this distinction is mistaken. In the case of *The Elin, supra*, it is said that "he never intended to break through the rule as to priorities." The decisions of his that are relied on had respect only to the marshaling of remedies in the case of foreign vessels; not at all to the ranking of liens as such.

The liens created or recognized by the law upon the contracts of the ship with seamen, freighters, supply-men, or lenders on bottomry are designed for the security of the parties concerned, and are deemed necessary for the conveniences of commerce, and in the exigencies of navigation. Such claims, moreover, are mostly incapable of being conveniently secured in any other way than by a lien on the ship, and are therefore, as a rule, equitably entitled to a superior privilege. Damage liens, on the other hand, whether for injuries to cargo or to vessels, by collision, by stranding, or by other negligent navigation, belong to the perils of the seas, and are, for the most part, otherwise secured by the universal practice of marine insurance. If this security is neglected, it is by the choice or fault of the owner. The same need of security upon the ship, as respects such perils, does not exist; and hence they have everywhere been ranked, by the maritime law, below contract liens for wages, bottomry, and supplies. The controversy in the great majority of cases is practically with the insurer, (as it is mainly in this case,) who, having

in the first instance paid the loss, in effect, out of the fund created by the premiums advanced by all ships insured, seeks to recover indemnity from the offending ship. The insurer does indeed have the benefit of the injured party's lien. But to subordinate prior lienors for wages, bottomry, and supplies to the collision lien would be practically and in effect to treat those lienors as co-proprietors, *pro tanto*, in the offending ship, and responsible for its navigation; or as reinsurers *pro tanto* of the underwriters upon the vessel and cargo injured,—a relation as far as possible removed from the equitable relation of the parties. If the lienors may insure, so may the owners of the injured ship and cargo, as they usually do. They stand equal in this respect, and the superior equitable right of the prior contract lienors stands unaffected. *The Young America*, 30 Fed. Rep. 789, 798. The decision in the case of *The Young America* must, therefore, be applied in the present case, though the relation was one of pure tort, as in the case of *The Orient, supra*.

As the proceeds of the Carver are insufficient to pay her proportion of the collision damage, if her owners were personally responsible, as well as personally liable, for the wages and supply claimants, the latter might equitably be turned over to their personal remedy against the owners, on the principle of marshaling securities above referred to; since the damage claim, under our limited liability act, constitutes no personal demand against the owners of the Carver, and the proceeds of the vessel and freight are the only fund for its payment. *The Linda Flor, The Elin, supra; The Sailor Prince*, 1 Ben. 461; *The Orient*, 10 Ben. 624. But when the supply claims are contracted by the master in the course of the voyage, the owners, it would seem, are no longer legally liable on his contracts, except from the proceeds of the ship and freight. Act June 26, 1884, (23 St. at Large, p. 57, § 18.) The present supply claims were furnished, as I understand the proofs, upon the personal contract of the owners. The act of 1884 limiting the liability of the owners of a vessel on account of the same, does not, I think, restrict the liability of owners upon their own personal contracts, but only their liability "on account of the vessel;" that is, the liability that is imposed on them by law in consequence of their ownership of the vessel, viz., for the contracts or acts of the ship, or her master, without the owner's express intervention. Upon the hearing of the cause, however, it was admitted that the owners are personally insolvent and irresponsible; and, in such a case, the principle of marshaling securities cannot be invoked, since the contract lienors have practically only the security of the ship, *i. e.*, the same fund only that the damage lienors have. It is the precise case of which Dr. Lushington, in *The Linda Flor*, Swab. 309, observed, "it would be time to consider it when it arose." The material-men, as well as the seamen, are, therefore, entitled to the benefit of the legal rank of their lien, as superior to the lien for collision. A decree may be entered providing for the payment, first, of the wages of the libelant Bradley, $124.60, and the libelant Walsh, $36, with interest; next, that of the material-men, Horre, $29.95, Heipershausen, $161.61, with interest and costs; the balance to be paid to the Lehigh Coal & Navigation Company on account of the collision damage.