## THE F. H. STANWOOD.[1]

### COOPER v. THE F. H. STANWOOD et al.

*(Circuit Court of Appeals, Seventh Circuit. March 8, 1892.)*

MARITIME LIENS—SERVICES—DAMAGE FOR TORTS—PRIORITY.

A maritime lien for damages arising from a collision caused by negligent navigation has precedence over the lien of the crew of the offending vessel for wages earned by them on board such vessel before the collision, but is subordinate to the lien for such wages earned after the collision.

On Appeal from the District Court of the United States for the Northern District of Illinois.

STATEMENT BY JENKINS, DISTRICT JUDGE.

In Admiralty. The tug F. H. Stanwood, on the 18th day of September, 1890, and within the admiralty jurisdiction, negligently collided with and sank the canal propeller Whale. The crew of the tug consisted of three persons, a pilot, an engineer, and a fireman. On the 20th of September, 1890, the owner of the Whale filed his libel in the district court, seeking reparation for the wrong. The Stanwood was arrested, and afterwards, under decree of the court, sold by the marshal, and the proceeds covered into the registry of the court. The claimants of the tug intervened for their interests, and, upon hearing, a decree passed for the libelant sustaining his claim and assessing the damages. On the 4th day of October, 1890, the engineer and the pilot filed an intervening libel to recover their wages, subsequently amended to include the claim of the fireman. These wages were mainly earned prior to the collision; a portion of them subsequently thereto, and before the filing of the libel. On the 23d day of November, 1891, an order of distribution was made directing payment of the claims for wages for the season of 1890 in priority to the claim for damages by the collision. The fund was insufficient to pay the libelant in full. He thereupon appealed from the order of distribution. *Reversed.*

*John C. Richberg,* for appellant.

*C. E. Kremer,* for respondents.

Before GRESHAM, Circuit Judge, and JENKINS, District Judge.

JENKINS, District Judge, *(after stating the facts.)* The record presents for consideration the single question whether a maritime lien arising out of damage done in a collision caused by negligent navigation should be subordinated, with respect to its payment, to the maritime lien of the crew of the offending vessel for wages earned by them on board of such vessel. It is undoubted, as a general rule, that, as against claims arising *ex contractu,* the claim for seamen's wages is preferred. This is stated to arise out of the needed protection extended by the admiralty

---

[1] Reported by Louis Boisot, Jr., Esq., of the Chicago bar.

to a class of men improvident, reckless, and exposed to imposition, and also because "by his labor the common pledge for all the debts is preserved." The latter reason is perhaps the better foundation for the rule. Possibly, also, the reason of the rule may, in part, be found in the nature of the service, and in the encouragement supposed thereby to be held out to the crew to "stand by the ship" in all times of peril. Upon whatever foundation it may rest, the rule is not without its exceptions. Thus salvors are awarded priority over wages earned prior to the salvage service, and this upon the equitable consideration that the subsequent service has preserved the subject of the lien. *The Selina,* 2 Notes Cas. Adm. & Ecc. 18; *The Athenian,* 3 Fed. Rep. 248.

The contention that wages should be postponed to the payment of damages by collision is rested upon two grounds: *First,* that the seamen share in the fault of the offending vessel, and from considerations of public policy to discourage negligent navigation; *Second,* that it would be inequitable to permit a fund impounded to compensate a wrong.to be diverted to the payment of a participant in that wrong, or to one having a remedy against the owner of the offending vessel denied to the owner of the injured vessel.

We are of opinion that the contention is well sustained. The negligent navigation causing collision and consequent injury was the act of the crew, or of some one or more of them. The negligent act or omission is, in the law, charged upon the vessel so negligently navigated. She is treated as the offending thing. The fault of the crew is visited upon the agent by which the fault became effective, causing injury. It is an instance of imputed guilt, the sin of the crew being attributed to the innocent instrument. So, also, we think that, as to the injured vessel, the crew should share in the fault imputed to the offending vessel. As to the injured vessel, the offending thing and her crew are one. The crew participate in the navigation of the ship. She is the passive instrument of their active co-operation in effecting the injury. Ship and crew constitute the common enemy that has worked destruction. There may be but one directing mind. The others are, however, like the ship, his instruments in the perpetration of the wrong, and, as to the injured vessel, participants in the fault. They are joint tort-feasors. Which one, *inter se,* was directly and immediately responsible for the negligent act or negligent omission is of no moment to the vessel injured through their co-operation. We think it opposed to every principle of natural justice to permit one or more of an offending crew to hold priority over a claim for damages caused, directly or indirectly, by their act, and in the course of a common employment. That would be to reward guilt at the expense of innocence, and to tender premium to negligence. Careful navigation is essential to safety. It should be the constant care of courts of admiralty that no license be given to conduct prejudicial to life or property; that no safeguard to prudent navigation be removed; that no immunity be offered to negligent conduct. With the greatest care, navigation is hazardous. Seamen will not be less vigilant in the performance of duty if, as against the injured and the fund created to

compensate the wrong, they are held sponsors for the crew. They will not be less careful if the *res* charged with the payment of their wages be first subjected to the payment of the injury their fault had occasioned. The wrong done arose from the *delictum* of either the master or crew of the vessel at fault, and should be first compensated. This conclusion, as it seems to us, rests upon and finds support in the highest considerations of public policy. A fund already insufficient to compensate the injury should not be diverted to compensate those who actively, or by inference of law, have occasioned or contributed to the wrong. It is essential to the safety of commerce upon the seas to punish negligent navigation, and to redress the consequent injury, that others may not be encouraged to breach of duty. Careless navigation, reckless conduct of master and crew, avoidable collision, will be less frequent if punishment, not reward, shall surely follow transgression.

The second ground is also controlling. The seamen have a remedy by personal action against the owner of the offending vessel for the wages he has earned. There is no suggestion here of the insolvency of the owner. The insufficiency of the fund to pay the damages awarded is apparent. The owner of the injured vessel has no remedy, except against the offending vessel. Rev. St. § 4283; *Norwich Co.* v. *Wright*, 13 Wall. 104. It is a settled principle of equity that when one party has several, and the other but one, remedy, the former will be remitted to his additional remedy, and will not be permitted to select that which is the only remedy of the other party, when so to do would absorb or diminish the fund, and leave a just claim unsatisfied. There arises no element of hardship in remanding these seamen to their personal action. The owner is solvent, and able to respond to their just demands. To yield them precedence or equality in the distribution of the fund would be to compensate those who were the cause of the damage at the expense of those who suffered the injury; to so far absolve the owner responsible to those seamen, and whose vessel should make good the injury; to reward the wrong-doer; and to punish the innocent victim of wrong. We cannot bend our judgment to such inequitable conclusion.

The suggestion that the owner of a vessel may insure against collision, and so obtain indemnity, is without merit. Insurance would be the subject of independent contract for the benefit of the insured, not the wrong-doer. In respect to that, there is no privity between the offending crew and the owner of the injured vessel. The insurer, paying the loss, is subrogated to the rights of the insured, and clothed with all his remedies for the negligent injury. The insurer then stands in the shoes of the insured. This works mere change in the ownership of the right to redress. It neither extinguishes nor diminishes that right.

We conceive our views to have the support of the decided weight of authority. In England it would appear to be no longer an open question. Abb. Shipp. (11th Ed.) 621; MacL. Shipp. (3d. Ed.) 703; *The Chimera*, Coote, Adm. 121; *The Benares*, 7 Notes Cas. Adm. & Ecc. Supp. 50, 54; *The Aline*, 1 W. Rob. 111; *The Linda Flor*, Swab. 309; *The Elin*, 8 Prob. Div. 39, affirmed on appeal, Id. 129. In America there

would seem to be some divergence of opinion. The conclusion to which we have arrived is upheld upon one or the other of the grounds upon which it is rested, in Henry, Adm. 199; *The Spaulding,* 1 Brown, Adm. 313; *The Pride of The Ocean,* 3 Fed. Rep. 162, 7 Fed. Rep. 247; *The Maria and Elizabeth,* 12 Fed. Rep. 627; *The M. Vandercook,* 24 Fed. Rep. 472; *The R. S. Carter,* 38 Fed. Rep. 515, affirmed on appeal by Mr. Justice BLATCHFORD, 40 Fed. Rep. 331. Some support is also derived from the *dictum* of Mr. Justice BRADLEY in *Norwich Co.* v. *Wright,* 13 Wall. 104, 122.

In some of the discussion upon the subject, as notably in *The America, infra,* the priority awarded the creditor in damage is sought to be rested upon the rule of the admiralty that maritime liens are to be paid in the inverse order of their inception. We think such decision to be lodged upon faulty foundation. That rule relates to liens *ex contractu,* not to those arising *ex delictu;* and it is bottomed upon the obvious and just ground that each foregoing incumbrancer is benefited by means of the subsequent incumbrance, and is applied only to maritime liens of the same class or rank of privilege. It can have no application, as between a damage lien and a prior contract lien. In such case the reason of the rule fails. The lien for damages by collision is injurious, not beneficial, to a prior contract lien.

The cases opposed, or seemingly opposed, to our conclusion, demand consideration. First in order, *The America,* 16 Law Rep. 264, decided by Judge HALL, of the northern district of New York, in 1853, is strongly urged to our attention. It was there held that the lien of the collision claimant was not preferred to, but stood in equal rank with, that of material-men. The learned judge asserts the principle upon which the admiralty has recognized the right to redress for collision, that it is not only a civil indemnification, but a *quasi* penalty for the wrong, always to be enforced, that such wrong may not pass unredressed, inciting others to similar negligence, (page 276;) that the damage claimant is not in equal position to the creditor on mortgage or bottomry, or for materials, the injury to the one being *in invitum,* the extension of credit by the other being at his option; and concludes that, therefore, they stand upon equality, and are to be governed by the general rule of preference stated by him, (page 273,) that maritime liens of the same class or rank of privilege should be paid in the inverse order of the dates of their creation. The decision that was actually made, as we read the case, was that the damage claimant had precedence of the claimant for material previously supplied, because the lien was of later date. The decision was correct enough, but the reason upon which it was bottomed was, as we have shown above, fallacious. With respect to seamen's wages,— and all that is said upon the subject is merely *obiter,* the wages of the seamen having been paid without contention,—Judge HALL asserts the general rule of preference accorded to such claims, and declares, (page 273:)

"In some cases other claims, such as claims in cases of collision and salvage and bottomry claims, have been preferred to seamen's wages; but these

cases proceeded upon the same general principle, the preferred claims having accrued subsequent to the claim for wages."

He also declares (page 277) that "his [the seaman's] demand for wages is preferred to all other demands, for the same reason that the last bottomry bond is preferred to one of prior date." Referring then (page 282) to the case of *The Chimera*, wherein Dr. LUSHINGTON is stated to have held that seamen's wages do not take preference of the damages awarded in a cause of collision, Judge HALL states that, after an examination of the cases of *The Sidney Cove*, 2 Dod. 13, and *The Louisa Bertha*, 1 Law & Eq. Rep. 665, he is inclined to the opinion that seamen's wages for the same voyage should be preferred to the claims of the suitor in damage. The cases referred to, and upon which he seems to base his conclusion, were not cases of collision at all. The contention there was as between seamen's wages and a subsequent bottomry bond. The allowance of priority in such cases rests upon the general rule awarding precedence to seamen's wages over all other liens *ex contractu.* It seems to us that the argument of Judge HALL should have led him to a conclusion directly opposed to that reached by him, respecting the priority of seamen's wages in cases of collision. In *The America*, Judge HALL undertook a wide field of discussion, not involved in the case, as he expressly declares at pages 266, 284. He ventured to declare principles of maritime law in advance of any cause requiring their application. Naturally he fell into error. He failed to consider the principle upon which seamen's wages for prior service should be subrogated to claims for collision. He lost sight of the question of public policy involved, and of the equitable consideration that the seaman has another remedy than that *in rem*, and that, in a case like that now under consideration, the allowance of a claim would permit a solvent wrong-doer, liable for the wages of the seamen, to divert a fund applicable to the satisfaction of the wrong to the payment of his debts at the expense of the injured party. With deference, we are unable to yield assent to the *dictum* or reasoning invoked.

The other cases to which we are referred, as opposing the conclusion to which we have arrived, are, with the exception of *The Daisy Day*, 40 Fed. Rep. 538, cases arising in the eastern and southern districts of New York. *The Orient*, 10 Ben. 620; *The Samuel J. Christian*, 16 Fed. Rep. 796; *The Grapeshot*, 22 Fed. Rep. 123; *The Young America*, 30 Fed. Rep. 789; *The Amos D. Carver*, 35 Fed. Rep. 665; *The Daisy Day*, 40 Fed. Rep. 538; *The Gratitude*, 42 Fed. Rep. 299. With the exception of *The Orient* and *The Carver*, these were cases of damage arising from negligent towage, and the decisions are, with the exception of *The Daisy Day*, predicated upon the express ground that they are claims arising *ex contractu*, for violation of the contract to tow safely, and present *quasi* torts in distinction from cases of pure torts. It may well be doubted whether, in the light of the cases of *The Quickstep*, 9 Wall. 665, and *Norwich Co.* v. *Wright*, 13 Wall. 104, the distinction can be upheld. Judge SEVERENS, in *The Daisy Day*, expressly repudiates the distinction, and holds that claims in damage outrank claims arising *ex contractu;* but follows the

doctrine of *The Orient* and *The Samuel J. Christian*, so far as to prefer seamen's wages to claims "for such torts as negligence in towage, provided the seaman whose claim is in question was free from fault." With respect to the cases in the district of New York,—or so far, at least, as respects cases of pure torts,—they are expressly overruled by Mr. Justice BLATCHFORD in *The R. S. Carter*, 40 Fed. Rep. 331. Notwithstanding the ability manifested in the discussion of the question in those cases, they are shorn of their power by the later and controlling holding of superior authority. That decision was not rendered when *The Daisy Day* was decided. Had it been otherwise, it is possible that Judge SEVERENS would have held differently. At all events, it may be said that the equitable consideration that the seaman has a double, and the damage claimant a single, remedy was not considered by him in that decision. In *The Gratitude*, Judge BROWN, who had held negatively on the priority of liens for damages by collision, recognizes the binding authority of Mr. Justice BLATCHFORD's decision, but seeks to distinguish between cases of damage done *in invitum* to an independent vessel and damage by negligence under a voluntary contract of towage. As suggested above, the distinction may not be sustainable. We are not, however, here called upon to determine that question. It is proper, also, to add that the decision of Mr. Justice BLATCHFORD seems to have escaped the attention of the distinguished jurist whose ruling is here involved.

In *The Elin*, *supra*, the maritime lien for damage by collision was allowed precedence of the lien of the seamen for wages earned by them since the collision, upon the ground that it would give relief to the owner of the wrong-doing ship in the hands of the court. We are unable to follow the ruling to that extent. That ruling is in forgetfulness of the equitable consideration that the subsequent service has been beneficial to the fund. Like the case of salvage, the service following the collision preserved the *res* for subjection to the lien of the damage claimant, and brings the case, as to such subsequent service, within the rule that he shall be preferred who has contributed most immediately to the preservation of the thing. This rule imposes an equity upon an equity,—an equity not discharged by the consideration that, by inference of the law, the seamen were participants in the prior fault occasioning injury, nor impaired by the fact that they may have personal resort to the owner of the offending ship, the rule in the latter regard not applying to a superior equity. We hold, therefore, that in cases of pure tort, as to precedent wages, the damage claimant has priority, and that wages earned since the collision have precedence over the claim for damage by collision. The decree appealed from will be reversed, and the cause remanded for further proceedings in conformity to this opinion.