### THE OWEGO.

(District Court, W. D. Washington, N. D. August 1, 1923.)

No. 7496.

1. **Seamen** ⬤⇒27—**Lien for wages held not subject to lien of cargo owner for damage to cargo.**

Lien of seamen for wages *held* not subject to lien of a cargo owner for damage to cargo alleged to have been caused by unseaworthiness of the ship and negligence in loading, stowage, care, and discharge of the ship on the voyage on which the wages were earned.

2. **Shipping** ⬤⇒143—**Seamen not responsible for seaworthiness of ship or stevedoring work.**

Seamen are not responsible for the seaworthiness of the ship, nor for the loading, stowage, or unloading of the cargo.

In Admiralty. Libel by the Johnson Iron Works, Dry Dock & Shipbuilding Company and others against the Steamship Owego, wherein J. M. Rutherford and others intervened. Decree awarding wages to seamen.

Roberts & Skeel, of Seattle, Wash., for libelant Johnson Iron Works.

Kerr, McCord & Ivey, of Seattle, Wash., for libelants Woodward, Wight & Co. and W. G. Coyle & Co.

Bogle, Merritt & Bogle, of Seattle, Wash., for libelant Gulf Ports Stevedoring Co.

Wm. H. Gorham, of Seattle, Wash., for libelant Rothschild & Co.

Allen, Martin & Wardall, of Seattle, Wash., for libelant Cottle.

Daniel Landon, of Seattle, Wash., for seamen.

B. M. Levine, of Seattle, Wash., for Sunde & d'Evers Co.

Donworth, Todd & Higgins, of Seattle, Wash., for Harris Bros. & Co.

Herchmer Johnston, Bausman, Oldham, Bullitt & Eggerman, and Stratton & Kane, all of Seattle, Wash., for interveners.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

NETERER, District Judge. Consolidated under the above title are a number of original libels and intervening libels in rem against the steamship Owego by various maritime lien claimants for seamen's wages, stevedore's compensation, claims for repairs, compensation for materials furnished, and it also appears that prior to the institution of the causes herein a mortgage lien existed to secure unpaid purchase price of the ship. The vessel has been sold, and the proceeds paid into the registry of the court. The testimony has been taken covering the seamen's wages and amounts unpaid for services rendered upon the vessel.

[1] Objection is made by the Gulf Ports Stevedoring Company, the Southern Cotton Oil Trading Company, and Swayne, Hoyt & Co., Inc., interveners, to an interlocutory award and distribution to the seamen, for the reason that the Southern Cotton Oil Trading Company, claims damages to cargo suffered during the voyage when the wages of ·such seamen were earned, and that the "seamen are entitled to no wages and no maritime lien therefor subsequent to the date when the respondent was seized by the United States marshal under process issued in this cause," and that the record does not entitle the seamen to the penalty under section 4529, Rev. St. (Comp. St. § 8320), and upon argument it is urged that the seamen's wages are subject to the claim for damages to cargo on the same voyage. Objecting interveners cite The F. H. Stanwood, 49 Fed. 577, 1 C. C. A. 379; The Nettie Woodward (D. C.) 50 Fed. 224; The Maria & Elizabeth (D. C.) 12 Fed. 627; Rusk v. Freestone, 21 Fed. Cas. 19, No. 12,143; The Enterprise, 8 Fed. Cas. 729, No. 4,497; The John G. Stevens, 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969. The issue presented in The Enterprise, supra, was the right of appeal. All of the other cases are collision cases, and Judge Jenkins, in The F. H. Stanwood, supra, in which Judge Gresham concurred, said, in substance:

That the collision occurred through the negligent act of the seamen charged with the navigation of the ship; "the sin of the crew being attributed to the innocent instrument," the ship, and that the crew should share in the fault imputed to the offending ship, because they were the instruments through which the ship was navigated. "We think it opposed to every principle of natural justice to permit one or more of an offending crew to hold priority over a claim for damages caused, directly or indirectly, by their act, and in the course of a common employment. That would be to reward guilt at the expense of innocence, and to tender premium to negligence. Careful navigation is essential to safety. It should be the constant care of courts of admiralty that no license * * * to conduct prejudicial to life or property; that no safeguard to prudent navigation be removed; that no immunity be offered to negligent conduct."

This sentiment is reflected in the other decisions. Justice Gray, in The John G. Stevens, supra, 170 U. S. at page 119, 18 Sup. Ct. at page 547 (42 L. Ed. 969), says that:

"The case at bar, however, presents no question of the comparative rank of seamen's wages, which may depend upon peculiar considerations, and which, according to the favorite saying of Lord Stowell and of Mr. Justice Story, are sacred liens, and, as long as a plank of the ship remains, the sailor is entitled, against all other persons, to the proceeds as a security for his wages."

And he cites Sheppard v. Taylor, 30 U. S. (5 Pet.) 675, 710 (8 L. Ed. 269), where, in speaking of seamen's wages, Justice Story said:

"This lien is so sacred and indelible that it has, on more than one occasion, been expressly said that it adheres to the last plank of the ship."

And he also cites Pitman v. Hooper, 19 Fed. Cas. 730, No. 11,185, in which it is held that the claim for seamen's wages takes precedence over all claims. I have merely referred to these cases to show the sacredness with which the wage claims of seamen are held by admiralty courts; seamen being considered wards of the court, and not because the cases have any special application to this issue. Recovery is sought by the objecting libelant because of the "unseaworthy condition of the steamship Owego, and because of negligence and faulty loading, care, custody, stowage, and discharge of the Steamship. * * * *"

[2] There is no allegation or claim that the damage claimed to cargo was occasioned by any act of omission or commission on the part of the seamen, or occasioned by reason of the navigation of the ship. A seaman is one "who can hand, reef, and steer;" a mariner in the full sense, Hoof v. Pac. Amer. Fish. (D. C.) 284 Fed. 174. The seaman is not charged with any responsibility with relation to the seaworthiness, nor is a seaman in that sense a person employed in loading and unloading the vessel. It is in the record that a claim is made by the Gulf Ports Stevedoring Company, original libel No. 7509, consolidated with this case, for loading the cargo upon the vessel at the point of shipment. A stevedore is "a person employed in loading and unloading a vessel. * * * *" Bouvier. The claim, therefore, cannot be predicated upon any act of omission or commission with relation to this cargo to the seamen, and unpaid wages due them, as set out in the margin,[1] should be paid to them severally. It also appears that Riley Frizzell advanced to the master at the port of San Francisco $80 to pay seamen's wages, and this sum was actually paid to the seamen, and the claim in that amount should be allowed to him, with the other claims. The questions of penalty and transportation to the home port, and the claim of those members of the crew, who it is contended were part owners and not entitled to a lien, are postponed until all the testimony is taken and reported by the commissioner, and issues in the case determined.

[1] J. M. Rutherford, $157.70; J. McCarthy, $327; C. J. Wilson, $140; O. S. McKay, $72; C. J. Bobinsky, $50; H. Bailey, $65; R. Olsen, $64.75; I. Olsen, $60.95; I. R. Clark, $30.65; L E. Grignon, $47.10; J. Wall, $57.85; E. J. Lundergan, $34.80; J. Johsonson, $212.55; Gustave Envoll, $82.20; D. Phelps, $50.10; John McDevitt, $51.50; Paul Winters, $33.30; J. J. O'Donnell, $9.35; William Aucein, $28.35; R. E. Connelly, $19.50; E. L. Bush, $22; Ernest J. Foxwell, $34.15; Fred Laden, $16; John W. Eads, $18.35; Wm. Kemp, $19.50; Charles McGery, $28.80—a total of $1,735.85.